UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------

JAMES LYNCH, LLOYD JONES, and
BARON SPENCER, on behalf of
themselves and others similarly situated,

        Plaintiffs,

        -against-

CITY OF NEW YORK,

        Defendant.

---------------------------------

17cv7577

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        James Lynch, Lloyd Jones, and Baron Spencer bring this putative federal civil rights and common law false imprisonment class action against the City of New York. The City moves to dismiss Plaintiffs' constitutional claims for failure to state a claim and urges this Court to decline supplemental jurisdiction over the false imprisonment claims. For the reasons that follow, the City's motion to dismiss is denied.

## BACKGROUND

        This case concerns the constitutionality of pre-trial detention of people who have obtained judicial orders entitling them to release upon paying bail. In New York, "cash bail in the amount designated in the order fixing bail may be posted" at any time after an individual has been committed to custody. N.Y. Crim. Proc. Law § 520.15(1). And "[u]pon proof of the deposit of the designated amount," the detainee "must be forthwith released from custody." N.Y. Crim. Proc. Law § 520.15(1). The following is drawn from the allegations in the Complaint, which are presumed true for purposes of this motion.

        In broad strokes, the Complaint alleges that the City's byzantine and

dysfunctional procedures for bail payment and release result in unreasonably lengthy delays in permitting bail to be posted and subsequently releasing detainees for whom bail has been paid. Although bail may be paid at the courthouse after the arraignment judge fixes the amount, Plaintiffs assert that the City routinely transports defendants to Department of Correction ("DOC") facilities as a matter of administrative convenience before friends and family have the opportunity to post bail. (Compl., ECF No. 1, ¶¶ 24-26.) Once a defendant arrives at a DOC facility, a 12- to 22-hour intake process begins, during which the defendant is categorically ineligible to be released on bail. (Compl. ¶¶ 28-29.) In relevant part, this delay is further exacerbated by various inefficiencies in accepting bail, such as insufficient staff and DOC's antiquated paper-based records system. (Compl. ¶¶ 31-39.) Plaintiffs claim that the sacrifice of liberty in the name of administrative convenience continues even after bail has been accepted. For instance, because a DOC captain must sign off on each bail release, DOC waits until a critical mass of bailed-out detainees has gathered so their releases may be approved and processed en masse. (Compl. ¶¶ 43-45.)

Moreover, Plaintiffs allege that the City knew or should have known that its bail payment and release process could cause needless delay and the concomitant detention of individuals long after the legal basis for detention has dissipated. In particular, Plaintiffs point to a 2015 report authored by the Center for Court Innovation, a non-profit organization, identifying many of these deficiencies (the "CCI Report"). (See, e.g., Compl. ¶¶ 26, 30, 35, 39.) The CCI Report also made various recommendations to ensure that bail holds were honored, to allow bail to be posted during the intake process, to allocate sufficient staff, to remove reliance on paper-based systems, and to track the time between acceptance of bail and release. (Compl. ¶¶ 51-56.) These recommendations, according to Plaintiffs, fell on deaf ears.

The pre-trial detentions of the three putative class representatives are emblematic of these delays—James Lynch endured a 23-hour detention between posting bail and his release, Baron Spencer was forced to wait 18 hours after his bail was paid, and Lloyd Jones was released over 9 hours after his friends and family's 22-hour odyssey to post his bail.

I.     James Lynch

Lynch was detained at the Anna M. Kross Center ("AMKC") on Rikers Island. (Compl. ¶ 68.) On March 29, 2017, the Bronx Freedom Fund paid his $500 bail, which the City received at 3:56 p.m. (Compl. ¶¶ 68-69.) Sometime between 8:00 p.m. and 8:30 p.m., DOC personnel informed Lynch that his bail had been paid and directed him to gather his belongings in preparation for release. (Compl. ¶ 71.) Lynch waited for hours to be released, but nobody arrived to escort him out. (Compl. ¶¶ 72-73.) Instead, DOC personnel advised him to be patient when he inquired as to his release. (Compl. ¶ 73.) Around the designated "lights out" time at 11:00 p.m., Lynch realized that he would need to spend the night at AMKC and scrambled to secure his bedding, which he had given away in anticipation of his release. (Compl. ¶¶ 72, 74.)

Around 4:00 a.m. on March 30, 2017—roughly twelve hours after the City received Lynch's bail payment—DOC personnel began to transport other inmates in the housing area who had court appearances that day. (Compl. ¶ 75.) Although Lynch also had a court appearance that day, nobody came to process his release despite his pleas to DOC personnel. (Compl. ¶¶ 76-78.) Lynch was only escorted out of his housing area at approximately 9:00 a.m. and taken to an intake area, where he remained for another few hours. His detention at AMKC finally ended at 2:40 p.m., roughly 23 hours after the City received his bail payment. (Compl. ¶ 81.) And not only did the City delay Lynch's release after his bail was posted, but they detained him for so long that he missed his scheduled court appearance and a bench warrant was

ordered. (Compl. ¶ 84.) Lynch's bail receipt indicated that he had no outstanding warrants or detainers that would have precluded his immediate release. (Compl. ¶ 70.)

## II. Baron Spencer

Spencer was also a pre-trial detainee at AMKC. (Compl. ¶ 107.) And as with Lynch, the Bronx Freedom Fund paid his $1,000 bail on December 19, 2015, which the City received at 1:38 p.m. (Compl. ¶¶ 106, 108.) Lynch was only informed that his bail had been paid and directed to pack up his belongings close to midnight, over ten hours after the City received the payment. (Compl. ¶¶ 110-111.) But he too was not immediately released. Instead, DOC personnel escorted him to an intake area with several other detainees to spend the night, even as DOC officers slept, ate, or socialized in the intake area. (Compl. ¶¶ 111-112.) Spencer was released the next morning, approximately 18 hours after his bail was paid. (Compl. ¶ 113.) Like Lynch, Spencer's bail receipt indicated no outstanding warrants or detainers that would have prohibited his immediate discharge. (Compl. ¶ 109.)

## III. Lloyd Jones

As with Lynch and Spencer, the Complaint avers that Jones suffered an unreasonable period of detention after his bail had been paid. But Jones' ordeal also illustrates how the City's bail processing practices needlessly delay the payment of bail after it has been set. In his case, the DOC's delay in accepting bail resulted from internally contradictory obligations created by DOC's procedures and directives.

Jones was arraigned on January 7, 2017 at approximately noon, at which point the judge set bail at $2,000. (Compl. ¶¶ 86-87.) Jones' friends and family scrambled to collect money for bail, having been assured that he would remain at the courthouse for a short time so bail could be tendered. (Compl. ¶ 88.) Within thirty minutes, a friend arrived to do so but was

4

told to return after 2:00 p.m. because Jones' bail could not yet be accepted. (Compl. ¶ 89.) The friend returned just after 2:00 p.m. as instructed. (Compl. ¶ 90.) But now, the problem was not with the prematurity of the attempt to pay bail, but rather, that it was too late to pay bail at the courthouse because the DOC had whisked Jones away to the Vernon C. Bain Center ("VCBC"). (Compl. ¶ 90.) Following several unsuccessful attempts to ascertain Jones' eligibility for bail, his friend attempted to pay bail in person at VCBC around 8:00 p.m. (Compl. ¶ 92.) DOC personnel advised that Jones could not be released on bail because his intake process was ongoing and that his friend should check after midnight. (Compl. ¶¶ 93-94.) Yet again, DOC's left hand did not know what its right hand was doing. By the time Jones' friend called after midnight as directed, the employee responsible for processing bail had already left for the night. (Compl. ¶ 95.)

Another friend and Jones' mother finally succeeded in paying bail in person the next morning at 10:30 a.m.—approximately 22 hours after the first attempt to pay bail. (Compl. ¶ 97.) Several hours elapsed before DOC personnel informed Jones that his bail had been paid and that his paperwork was being processed. (Compl. ¶ 99.) At around 7:00 p.m., DOC personnel transported Jones to a cell in VCBC's intake area with other detainees waiting to be released after paying bail. (Compl. ¶ 100.) DOC released Jones at 8:00 p.m. on January 8, 2017, over 9 hours after it received his bail payment. (Compl. ¶ 101.) And as with Lynch and Spencer, Jones' bail receipt indicated no outstanding warrants or detainers that would have prevented his immediate release. (Compl. ¶ 97.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

5

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In resolving a motion under Rule 12(b)(6), a court accepts a plaintiff's allegations as true and draws all reasonable inferences in its favor. Gonzalez v. Hasty, 802 F.3d 212, 219 (2d Cir. 2015). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Mastafa v. Chevron Corp., 770 F.3d 170, 177 (2d Cir. 2014) (quotation mark omitted).

On a Rule 12(b)(6) motion, a court may generally only consider the "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." Concord Assocs., L.P. v. Entm't Props. Tr., 817 F.3d 46, 51 n.2 (2d Cir. 2016) (citation omitted). Because the Complaint extensively references and quotes from the CCI Report, this Court deems it incorporated by reference.

## DISCUSSION

The City contends that Plaintiffs' constitutional claims fail for two independent reasons. First, the City asserts that Plaintiffs fail to allege an underlying constitutional violation because the length of time for which they were allegedly detained was presumptively reasonable. Second, the City submits that the Complaint does not allege a policy or practice under Monell v. Department of Social Services and its progeny. Likewise, the City seeks dismissal of the false imprisonment claims, though not on the merits. Rather, the City argues that supplemental jurisdiction should not be exercised over Plaintiffs' false imprisonment claims in the absence of a plausible federal claim. Finally, the City seeks to bar Plaintiffs' claims based on their failure to

6

allege physical injury.

I.      Prison Litigation Reform Act

In relevant part, the PLRA bars actions "brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody" without a prior showing of physical injury. 42 U.S.C. § 1997e(e). As a threshold matter, neither side disputes that Plaintiffs had been released from confinement when they filed this action. The parties' disagreement boils down to whether the language "confined in a jail, prison, or other correctional facility" applies to prisoners only while they are confined or extends to actions filed after their release.

The City urges the latter reading, relying on Cox v. Malone. The Cox court held that § 1997e(e)'s bar also applied to actions brought by "former inmates incarcerated at the time of the alleged injury but subsequently released." Cox v. Malone, 199 F. Supp. 2d 135, 140 (S.D.N.Y. 2002). It explained that although the Second Circuit had held in another case that the PLRA's exhaustion requirement did not apply to individuals who were no longer incarcerated, its rationale could not be extended to § 1997e(e)'s physical injury requirement. See Cox, 199 F. Supp. 2d at 139 (citing Grieg v. Goord, 169 F.3d 165, 167 (2d Cir. 1999)). In particular, the Cox court reasoned that the PLRA's exhaustion requirement was a procedural one meant to stem frivolous complaints by prisoners with little to lose and everything to gain. Cox, 199 F. Supp. 2d at 139-40. Thus, requiring exhaustion by those who could no longer avail themselves of a facility's administrative remedies "ma[de] no sense." Cox, 199 F. Supp. 2d at 140. By contrast, because the Cox court found that § 1997e(e)'s physical injury requirement was a "substantive limitation on the type of actions," the purpose of "weed[ing] out frivolous claims where only emotional injuries are alleged" was equally served irrespective of whether the individual was

7

detained or not at the time of filing. Cox, 199 F. Supp. 2d at 140.

This Court declines to follow Cox's reasoning for several reasons. As an initial matter, in focusing solely on the purpose of the PLRA, Cox gives short shrift to the plain language of the statute. United States v. Am. Soc'y of Composers, Authors & Publishers, 627 F.3d 64, 72 (2d Cir. 2010) (explaining that the first step in any statutory construction case is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case"). Indeed, several courts have found that by its plain language, § 1997e(e) only applies to prisoners "confined in a jail, prison, or other correctional facility" when the action is "brought." E.g., Cano v. City of New York, 44 F. Supp. 3d 324, 330-31 (E.D.N.Y. 2014); McBean v. City of New York, 260 F.R.D. 120, 142-43 (S.D.N.Y. 2009); Kelsey v. Cty. of Schoharie, 2005 WL 1972557, at *1 (S.D.N.Y. Aug. 5, 2005). Such a reading comports with decisions of sister Circuits. See Harris v. Garner, 216 F.3d 970, 979-80 (11th Cir. 2000); Kerr v. Puckett, 138 F.3d 321, 322-23 (7th Cir. 1998).

Stated differently, even assuming that § 1997e(e) substantively limits the type of actions that can be brought by prisoners to ones that allege physical injury, that substantive limitation says nothing about the type of plaintiff to which it applies. Cox's reasoning that the purpose of weeding out frivolous claims is served even if the individual is not detained when the action is filed would effectively excise the qualifying language "confined to a jail, prison, or other correctional facility" in § 1997e(e). Accord Hayes v. City of New York, 2014 WL 4626071, at *12 (S.D.N.Y. Sept. 15, 2014). Moreover, the Second Circuit has interpreted identical language in § 1997e's other subsections to describe the status of a plaintiff at the time of filing. See Perez v. Westchester Cty. Dep't of Corrs., 587 F.3d 143, 155 (2d Cir. 2009) (discussing 42 U.S.C. § 1997e(d)(1)); Grieg, 169 F.3d at 167 (discussing 42 U.S.C. § 1997e(a)).

It is a well-settled canon of statutory construction that "identical words used in different parts of the same act are intended to have the same meaning." Pereira v. Sessions, 138 S. Ct. 2105, 2115 (2018) (citation and quotation mark omitted); see generally Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 171-72 (2012). For these reasons, § 1997e(e) does not apply to this action.

II. Constitutional Claims

Section 1983 furnishes a private right of action against "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A municipality may not be held liable under § 1983 under a theory of respondeat superior. Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Rather, to establish a municipal liability claim, a "plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 140 (2d Cir. 2010) (citations and quotation marks omitted). The first and third elements are at issue.

A. Denial of Constitutional Right

At the outset, analyzing whether an underlying constitutional violation exists requires some precision in defining the constitutional injury. The Complaint alleges that the City's bail practices result in delays both in accepting bail payments and releasing pre-trial detainees after their bail has been paid. Thus, the constitutional inquiry centers on the point at which a delay in accepting bail once it has been fixed or in releasing pre-trial detainees after the

9

legal basis for detention has ended becomes unconstitutional.

This inquiry raises the threshold question of the constitutional provision giving rise to Plaintiffs' claims, which Plaintiffs assert under the Fourth and Fourteenth Amendments. See Manuel v. City of Joliet, 137 S. Ct. 911, 920 (2017) (describing the "threshold inquiry in a § 1983 suit" as "'identify[ing] the specific constitutional right' at issue"). The Supreme Court has instructed that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing those claims.'" Albright v. Oliver, 510 U.S. 266, 273 (1994) (plurality opinion) (citation and quotation marks omitted).

While the authority in this Circuit is sparse, other federal courts of appeals have recognized that the fixing of bail gives rise to a liberty interest in paying bail that is protected by substantive due process. See, e.g., Steele v. Cicchi, 855 F.3d 494, 502 (3d Cir. 2017); Dodds v. Richardson, 614 F.3d 1185, 1192 (10th Cir. 2010); Campbell v. Johnson, 586 F.3d 835, 840 (11th Cir. 2009); Golberg v. Hennepin Cty., 417 F.3d 808, 811 (8th Cir. 2005). Similarly, other federal courts have generally used the rubric of substantive due process to analyze claims based on the delayed release of pre-trial detainees after the legal basis for detention has dissolved. See, e.g., Berry v. Baca, 379 F.3d 764, 773 (9th Cir. 2004); Barnes v. Dist. of Columbia, 793 F. Supp. 2d 260, 274, 275 & n.11 (D.D.C. 2011).

To be sure, the Supreme Court has held that an individual may state a Fourth Amendment claim for unlawful pre-trial detention even after the initiation of legal process. Manuel, 137 S. Ct. at 919. Indeed, the Second Circuit has previously recognized that the Fourth Amendment governs post-arraignment pre-trial detention in light of the Supreme Court's

10

observation that the "Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." Russo v. City of Bridgeport, 479 F.3d 196, 208 (2d Cir. 2007) (quoting Albright, 510 U.S. at 274). But this is not to say that the Fourth Amendment necessarily governs every constitutional challenge to pre-trial detention. As explained in Manuel, "[l]egal process did not expunge [plaintiff's] Fourth Amendment claim because the process he received failed to establish what that Amendment makes essential for pretrial detention—probable cause to believe he committed a crime." Manuel, 137 S. Ct. at 919-20. In this context, Russo's conclusion that the Fourth Amendment squarely covers the right to be protected against "sustained detention stemming directly from law enforcement officials' refusal to investigate available exculpatory evidence" is more akin to detention without probable cause. Russo, 479 F.3d at 208. By contrast, Plaintiffs here do not challenge their detentions on the basis that the City lacked a constitutional basis for detention ab initio. Instead, their challenges are based on infringements to liberty interests that only ripen after bail has been fixed and after it has been paid—and after the probable cause determination has been made. Thus, this Court finds substantive due process a more appropriate lens through which to analyze Plaintiffs' claims.[1]

To state a substantive due process claim, a plaintiff must allege (1) a valid liberty or property interest, (2) upon which defendants infringed in an arbitrary or irrational manner. Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 503 (2d Cir. 2001). As discussed, Plaintiffs have identified a liberty interest in paying bail once it is fixed and in being released

---

[1] While the City analogizes to cases that analyze the lawfulness of detaining convicted prisoners past their release dates under the Eighth Amendment, those cases—and that Amendment—are inapposite to the pre-trial detention context. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (explaining that pre-trial detainees "have not been convicted of a crime and thus may not be punished in any manner—neither cruelly nor unusually nor otherwise" (citation and quotation marks omitted)); see Edrei v. Maguire, 892 F.3d 525, 533 (2d Cir. 2018) (explaining that "[a]rrestees may invoke the Fourth Amendment's prohibition against 'unreasonable' seizures," "[t]hose incarcerated for a criminal conviction draw on the Eighth Amendment's ban on 'cruel and unusual punishments,'" and "pretrial detainees and non-incarcerated persons rely on the constitutional guarantee of 'due process'" (internal citations omitted)).

11

once bail is paid.  See Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").  When executive action "infringes a protected right, a plaintiff must show not just that the action was literally arbitrary, but that it was 'arbitrary in the constitutional sense.'"  O'Connor v. Pierson, 426 F.3d 187, 203 (2d Cir. 2005) (citation omitted).  In other words, only conduct that "shocks the conscience" will form the basis for a substantive due process violation for executive action.  O'Connor, 426 F.3d at 203.  In this Circuit, "whether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken."  O'Connor, 426 F.3d at 203.  Where the "government owes a special duty of care to those in its charge," such as the duty "owed by the state to prisoners in its custody," deliberate indifference "can support substantive due process liability."  O'Connor, 426 F.3d at 203.

Here, Plaintiffs adequately allege that their interest in paying bail and being released after paying bail has been infringed by the City's deliberate indifference.  As the Second Circuit recently reiterated, the "'touchstone of due process' is protection from 'the exercise of power without any reasonable justification in service of a legitimate governmental objective.'"  Edrei v. Maguire, 892 F.3d 525, 535 (2d Cir. 2018) (citing Cty. of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998)).  Plaintiffs allege that the City systemically infringes pre-trial detainees' liberty interests in paying bail by routinely removing them from the courthouse before bail can be posted and transferring them to DOC facilities to begin a multi-hour intake procedure during which they are categorically ineligible for release.  Construing all inferences in favor of Plaintiffs, the Complaint suggests that there is no reason—aside from accommodating shift changes and bus schedules—that detainees cannot be held at the courthouse to allow bail to be

12

paid; nor is there any reason why bail cannot be accepted during the intake procedure. Ultimately, whether the City can demonstrate a legitimate governmental objective is a matter for summary judgment or trial.

Likewise, Plaintiffs sufficiently plead that DOC has a practice of forcing detainees who have already paid bail to remain detained until a critical mass forms such that their releases may be approved and processed in one fell swoop. According to Plaintiffs, there is no justification for this practice aside from convenience. At this stage of the litigation and especially given the primacy of the right to be free from bodily restraint, Plaintiffs plausibly allege that the City acted with deliberate indifference based on its purported knowledge from the CCI Report that its deficiencies in bail processing and release could result in unnecessary over-detentions of pre-trial detainees. Cf. Hancock v. Cty. of Rensselaer, 882 F.3d 58, 66 (2d Cir. 2018) (explaining that for substantive due process purposes, stronger interests "will be required to hold executive actors liable who acted with less culpable mental states").

The City does not appear to quarrel with the proposition that the prolonged pre-trial detention of those entitled to release on bail based on delays in posting bail or in effecting release may rise to the level of a constitutional violation. Instead, its primary contention is that the detentions in this case are presumptively reasonable because they fall within the bright-line 48-hour period established by the Supreme Court in County of Riverside v. McLaughlin. In "articulat[ing] more clearly the boundaries of what it permissible under the Fourth Amendment," the Supreme Court proclaimed that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter," be immune from systemic constitutional challenges. Cty. of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991). Under McLaughlin, detentions within 48 hours of arrest can nevertheless be unconstitutional if the

13

plaintiff can demonstrate that the "probable cause determination was delayed unreasonably"—whether due to a "delay[] for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." McLaughlin, 500 U.S. at 56. Because Plaintiffs' pre-trial detentions did not exceed 48 hours, and in the absence of allegations of bad faith or delay for delay's sake, the City submits that the constitutional claims must be dismissed.

The City's argument hinges on the applicability of McLaughlin to this factual scenario. In particular, it urges this Court to adopt the reasoning of another decision in this District applying McLaughlin to a five-hour detention based on the jail's refusal to accept bail and release the plaintiff. See Scalpi v. Town of E. Fishkill, 2016 WL 858916, at *8 (S.D.N.Y. Feb. 29, 2016). In Scalpi, the court began with the premise that claims for prolonged post-arrest detention implicate the Fourth Amendment. Scalpi, 2016 WL 858916, at *8 (citing Mikulec v. Town of Cheektowaga, 909 F. Supp. 2d 214, 227 (W.D.N.Y. 2012) and Russo, 479 F.3d at 209). The court then stated—without much analysis—that "[a] jurisdiction that releases the accused or 'provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with" the requirement of a prompt probable cause hearing after arrest. Scalpi, 2016 WL 858916, at *8. Based on these propositions, it concluded that the plaintiff's Fourth Amendment rights were not violated because she failed to allege any impermissible reasons to overcome the presumptive validity of her five-hour detention. Scalpi, 2016 WL 858916, at *8.

But the City's reliance on Scalpi is misplaced, in large part, because the cases on which Scalpi relies are inapposite. As discussed, this Court disagrees that the Fourth Amendment applies to Plaintiffs' claims, which—unlike those in Mikulec or Russo—do not challenge the underlying constitutional basis to detain them in the first instance. Further,

14

Mikulec states that a jurisdiction that releases the accused or provides probable cause determinations within 48 hours of arrest comports with the Constitution. Mikulec, 909 F. Supp. 2d at 227. Of course, such a pronouncement is entirely appropriate in the Fourth Amendment context because it simply means that after restraining the liberty of an individual, the government must either promptly demonstrate the basis for continued detention or release the individual if it cannot. Such a presumption balances the State's "strong interest in protecting public safety by taking into custody those persons who are reasonably suspected of having engaged in criminal activity" with a warrantless arrestee's right to a prompt determination of probable cause, and the 48-hour bright line reflects the "everyday problems of processing suspects through an overly burdened criminal justice system." McLaughlin, 500 U.S. at 53, 55.

Attempting to apply McLaughlin's presumption to this factual scenario is more elusive. At minimum, the liberty interest of a pre-trial detainee whose bail has been paid is undoubtedly greater than that of a warrantless arrestee, while at the same time, a bail determination may diminish the State's public safety interest. Accord Berry, 379 F.3d at 772. The different balance of interests between this case and McLaughlin suggests that its presumption would be inapt here. And even assuming the propriety of a McLaughlin-type presumption, the City does not offer any rationale for why 48 hours reflects the time needed to undertake administrative tasks incident to release. See Barnes, 793 F. Supp. 2d at 276 (discussing why "courts appear to agree that the maximum permissible administrative delay in the overdetention context likely falls well short of the 48-hour horizon set out in McLaughlin"). Indeed, the McLaughlin Court selected a 48-hour period based on the Ninth Circuit's determination "that it takes 36 hours to process arrested persons in Riverside County." McLaughlin, 500 U.S. at 57. In view of these concerns, this Court declines to apply McLaughlin

15

to this factual scenario.

B. Official Policy or Custom

A municipal policy or custom may be demonstrated by "(1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised deliberate indifference to the rights of the plaintiff and others encountering those subordinates." Holmes v. City of New York, 2018 WL 4211311, at *3 (S.D.N.Y. Sept. 4, 2018) (citations and quotation marks omitted).

Plaintiffs offer the latter two as independent bases for municipal liability. But the Complaint, taken as true, sufficiently alleges municipal liability based on the City's widespread practices of immediately transporting detainees to DOC facilities to begin an intake process during which they are categorically ineligible for release and continuing to detain those who have paid bail so that releases may be approved and processed in the aggregate. See Green v. City of New York, 465 F.3d 65, 80 (2d Cir. 2006) (explaining that municipal liability may be shown by demonstrating that "the municipality's practice, as opposed to its formal policy, is to engage in the constitutional violation at issue"). Drawing all inferences in favor of Plaintiffs, the Complaint alleges more than mere over-detentions isolated to the named Plaintiffs, but that the City's systemic practices are "so manifest as to imply the constructive acquiescence of [DOC's] policy-making officials." See Green, 465 F.3d at 80 (citation and quotation mark omitted).

III. False Imprisonment Claims

A court "shall have supplemental jurisdiction over all other claims that are so

16

related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). Neither party takes issue with this Court's supplemental jurisdiction over Plaintiffs' state law claims. Instead, the City's sole basis for dismissal is based on § 1367(c)(3), under which a court <u>may</u> decline to exercise jurisdiction if it has dismissed all claims over which it has original jurisdiction. Because this Court concludes that Plaintiffs have stated a plausible constitutional claim, § 1367(c)(3) provides no basis for dismissal.

## CONCLUSION

For the foregoing reasons, the City's motion to dismiss is denied. The Clerk of Court is directed to terminate the motion pending at ECF No. 24. The parties shall appear for a status conference on October 23, 2018 at 12:30 p.m.

Dated: September 28, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.