UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LLOYD JONES and BARON SPENCER, on Behalf of Themselves and Others Similarly Situated, | ECF Case |
| Plaintiffs, | No. 17 Civ. 7577 |
| - against - | |
| CITY OF NEW YORK, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

TABLE OF CONTENTS

PAGE NO(s)

TABLE OF AUTHORITIES ................................................................................ iiii-vi

INTRODUCTION .................................................................................................. 1

I.    FACTUAL AND PROCEDURAL BACKGROUND........................................ 2

      A.    Factual Background ................................................................... 2

      B.    Complaint and Motion to Dismiss ............................................. 3

      C.    Discovery and Information Exchange ........................................ 4

      D.    Mediation and Settlement ......................................................... 6

II.   SUMMARY OF THE SETTLEMENT TERMS ................................... 10

      A.    Overview................................................................................... 10

      B.    The Settlement Class ................................................................ 10

      C.    Monetary Relief for the Settlement Class ................................ 10

            1.    Award Amounts .......................................................... 10

            2.    Eligibility ................................................................... 11

            3.    Releases....................................................................... 13

      D.    Service Awards, Attorneys' Fees and Costs, and Administrative Costs .. 13

            1.    Administrative Costs................................................... 13

            2.    Service Awards .......................................................... 15

            3.    Attorneys' Fees and Costs .......................................... 15

III.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ... 16

      A.    Adequacy of Representation ..................................................... 18

      B.    Arm's Length Negotiations....................................................... 20

      C.    Adequacy of Relief .................................................................. 22

      D.    Costs, Risk, Delay of Trial and Appeal ................................... 22

i

1.      Effectiveness of the Proposed Method of Distributing Relief ...... 24

2.      The Terms of Any Proposed Award of Attorneys' Fees and Expenses .................................................................................... 26

3.      Any Agreement Required to be Identified Under Rule 23(e)(3) .. 27

4.      Other *Grinnell* Adequacy Factors ................................................ 27

E.      Equitable Treatment of Class Members .................................................... 30

IV.      CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE ..................................................................................................... 32

A.      Rule 23(a) is Satisfied ............................................................................... 32

B.      Rule 23(b)(3) is Satisfied ......................................................................... 34

V.      THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE ..................................................................................................... 36

A.      Individualized Notice ................................................................................ 36

B.      Publication Notice and Paid Media Notice .............................................. 38

C.      Form and Content of Notices, Settlement Website, Claim Submission, and Class Member Questions .................................................................... 41

CONCLUSION ................................................................................................................... 43

TABLE OF AUTHORITIES

PAGE NO(s)

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................. 35

*Betances v. Fischer*,
    304 F.R.D. 416 (S.D.N.Y. 2015) ............................................................................ 19

*Brown v. Kelly*,
    244 F.R.D. 222 (S.D.N.Y. 2007) ............................................................................ 19

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010) ................................................................................... 19

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ........................................................................... *passim*

*Cnty. of Suffolk v. Long Island Lighting Co.*,
    710 F. Supp. 1422 (E.D.N.Y. 1989) ...................................................................... 35

*Cnty. of Suffolk v. Long Island Lighting Co.*,
    907 F.2d 1295 (2d Cir. 1990) ................................................................................. 36

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ..................................................................................... 32

*Cordes & Co. Fin. Servs., Inc. v. AG. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ..................................................................................... 18

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ......................................................................... 20, 21, 22

*Diaz v. E. Locating Serv., Inc.*,
    No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ......................... 17

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................... 30, 32

*George v. Shamrock Saloon II, LLC*,
    No. 17 Civ. 6663, 2021 WL 3188314 (S.D.N.Y. July 28, 2021) .......................... 42

*Gordon v. Vanda Pharms. Inc.*,
    No. 19 Civ. 1108, 2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) .................... 17, 22

*Hall v. Children's Place Retail Stores, Inc.*,
    669 F. Supp. 2d 399 (S.D.N.Y. 2009) ............................................................ 30

*Hernandez v. Merrill Lynch & Co., Inc.*,
    No. 11 Civ. 8472, 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) .................... 17

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) .................................................................... 25

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012) ........................................................................... 35

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) .............................................................. 22

*In re Crazy Eddie Secs. Litig.*,
    824 F. Supp. 320 (E.D.N.Y. 1993) ................................................................ 30

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................... 28

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) ..................................................... *passim*

*In re Initial Public Offering Secs. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009) ............................................................ 30

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ...................................................................... 42

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................... 24

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................... 24, 25, 29

*In re Petrobras*,
    862 F.3d 250 (2d Cir. 2017) ........................................................................... 33

*In re Take Two Interactive Sec. Litig.*,
    No. 06 Civ. 1131, 2010 WL 11613684 (S.D.N.Y. June 29, 2010) ................... 26

*In re U.S. FoodServ. Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013) ........................................................................... 34

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ........................................................................... 16

iv

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)............................................................................. 25

*Johnson v. Nextel Comms. Inc.*,
  780 F.3d 128 (2d Cir. 2015)........................................................................................... 33

*Lea v. Tal Educ. Grp.*,
  No. 18 Civ. 5480, 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ....................... 21, 23, 25

*Matheson v. T-Bone Rest., LLC*,
  No. 09 Civ. 4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)................................... 29

*McMahon v. Olivier Cheng Catering and Events, LLC*,
  No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ................................... 28

*Mikhlin v. Oasmia Pharm. AB*,
  No. 19 Civ. 4349, 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021)...................................... 18

*Monell v. Department of Social Services*,
  436 U.S. 658 (1978)................................................................................................. 4, 34

*Nichols v. Noom, Inc.*,
  No. 20 Civ.3677, 2022 WL 2705354 (S.D.N.Y. July 12, 2022) .............................. 28, 33

*Parker v. City of New York*,
  No. 15 Civ. 6733, 2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017) ............................. 27, 29

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) ..................................................................................... 34

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015)........................................................................................... 34

*Rosenfeld v. Lenich*,
  No. 18 Civ. 6720, 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021)............................... *passim*

*Shahriar v. Smith & Wollensky Restaurant Grp., Inc.*,
  659 F.3d 234 (2d Cir. 2011)........................................................................................... 33

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015)............................................................................................. 34

*Velez v. Majik Cleaning Serv., Inc.*,
  No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)................................... 24

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)........................................................................... 16, 20, 21, 29

*Wise v. Kelly*,
 620 F. Supp. 2d 435 (S.D.N.Y. 2008)............................................................. 19

*Yates v. Checkers Drive-In Restaurants, Inc.*,
 No. 17 Civ. 9219, 2020 WL 6447196 (N.D. Ill. Nov. 3, 2020)........................................ 37

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

Fed. R. Civ. P. 30(b)(6)........................................................................................... 5

Fed. R. Civ. P. 54 ................................................................................................ 16

**Statutes**

42 U.S.C. § 1983 .................................................................................................. 3

Local Law 2017/123 § 9-148 ..................................................................................... 3

N.Y. Crim. Proc. Law § 500.10 .................................................................................. 2

**Other Authorities**

Newberg § 13:3 ................................................................................................... 35

**INTRODUCTION**

Subject to Court approval, plaintiffs Lloyd Jones and Baron Spencer ("Class Representatives" or "Named Plaintiffs"), individually and on behalf of the class of over 71,000 individuals they seek to represent (collectively, "Plaintiffs" or "Class Members"), and Defendant City of New York ("Defendant" or "City") (altogether, the "Parties") have settled this class action lawsuit. In their complaint, Plaintiffs alleged that the City's Department of Correction ("DOC") kept them in jail for hours or days after their bail was paid and they were entitled to be released from DOC custody. To settle Plaintiffs' claims, and without admitting liability, Defendant has agreed to pay a settlement award to each person detained in DOC custody during the class period whose release was delayed after their bail had been paid, and who files a valid claim attesting that they reasonably believe their release may have been delayed by three hours or more. The amount of payment is $3,500 for each instance of an individual's release on bail during the Class Period. The class period ("Class Period") is defined as October 4, 2014 through October 21, 2022.

Because the proposed settlement satisfies the criteria for preliminary approval, Plaintiffs respectfully request that the Court:

(i) grant preliminary approval of the settlement agreement between the Parties dated October 21, 2022 (the "Settlement Agreement"), Ex. 1 to the Declaration of Debra L. Greenberger ("Greenberger Decl.").[1]

(ii) preliminarily certify the settlement class (the "Settlement Class") and appoint Emery Celli Brinckerhoff Abady Ward & Maazel LLP ("ECBAWM"), Romano & Kuan PLLC,

---

[1] All exhibits identified by number are attached to the Declaration of Debra L. Greenberger, dated November 22, 2022, filed in support of this motion. All exhibits identified by letter are attached to the Declaration of Tiffany Janowicz, dated November 21, 2022, filed in support of this motion.

1

and Kaufman Lieb Lebowitz & Frick ("KLLF") as class counsel for the Settlement Class ("Class Counsel");

(iii) approve Rust Consulting, Inc.  ("Rust") as the settlement administrator (the "Administrator");

(iv) approve the form, content, and manner of notice to the Settlement Class and authorize notice to be distributed in the manner described in the Declaration of Tiffaney Janowicz, as well as the proposed notices to Class Members and the proposed Claim Form, *see* Janowicz Decl. Exs. C-G; and

(v) order Defendant to pay the costs of notice and administration to the Administrator pursuant to the terms and conditions set forth in the Settlement Agreement.

Pursuant to the terms of the Settlement Agreement, Defendants will not oppose Plaintiffs' motion so long as it conforms to the terms of the agreement.

A proposed order (approved by both Plaintiffs and Defendants) granting preliminary approval is attached as Exhibit 2 to the Greenberger Declaration.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Background

The facts of this case, initially filed in 2017, are well documented in various Court submissions and in the Court's motion to dismiss decision (Order and Opinion dated September 28, 2018, ECF No. 32). Plaintiffs are a class of individuals that allege, upon their arrest and arraignment before a New York State judge, each of them was ordered entitled to release upon posting bail in a specified amount.  *See* N.Y. Crim. Proc. Law § 500.10(3). Plaintiffs alleged that DOC refused to accept bail payments until DOC had completed the intake process, and even after class members' bail was paid, the City continued to detain them for hours or days after they should have been released.

2

The Named Plaintiffs and class representatives in this class action are Lloyd Jones and Baron Spencer. The Defendant is the City of New York. The proposed Settlement Class is defined as "all people who were: (a) in the Custody of DOC; and (b) were on at least one occasion released from DOC Custody upon payment of Bail during the Class Period; and (c) had a delay in their release from Custody after Bail had been paid." Ex. 1 at ¶ 50. The "Class Period" is defined as the period between October 4, 2014 (three years prior to the filing of the Complaint on October 4, 2017) and October 21, 2022 (the execution date of the Settlement Agreement). *Id.* at ¶ 22. "Custody" means that an individual is under the control of or subject to the direction of DOC. *Id.* at ¶ 27.

### B.   Complaint and Motion to Dismiss

On October 4, 2017, Named Plaintiffs Lloyd Jones and Baron Spencer, together with James Lynch, filed a complaint on behalf of themselves and a putative class against the City, alleging a violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and false imprisonment under New York law. ECF No. 1. As alleged in the complaint, the New York City Council passed Local Law 2017/123 that required DOC to accept cash bail payments immediately and continuously for incarcerated individuals after they are admitted to DOC custody, and thereafter release those individuals "within the required time period." *Id.* at ¶ 60 (quoting Local Law 2017/123 § 9-148(b)). Pursuant to the Local Law, beginning on October 1, 2018, the "required time period" has been three hours. *Id.* at ¶ 61 (quoting Local Law 2017/123 § 9-148(d)). Though the legislative history of the Local Law made clear that DOC possessed the capacity to release individuals no later than three hours after their bail had been paid, DOC nonetheless detained incarcerated individuals for many hours or days beyond the three-hour threshold, without any legitimate governmental need. *Id.* at ¶ 65. DOC refused to accept or process bail payments until an individual had completed processing at a DOC jail facility—a process that took 22 hours or

more—even if the bail amount was available and presented to DOC. *Id.* at ¶¶ 29-30, 55, 128. Using defective, outdated, and inadequate systems, combined with failure to assign adequate staff, along with other deficiencies, DOC routinely held people for hours or days after they posted bail. *Id.* at ¶¶ 42-44, 128.

The City filed a motion to dismiss the complaint on January 3, 2018, challenging whether Plaintiffs had alleged a constitutional violation; whether Plaintiffs had sufficiently alleged liability of the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); whether Plaintiffs possessed a claim for compensatory damages given their lack of physical injury; and whether the Court should retain supplemental jurisdiction over Plaintiff's state law claim of false imprisonment. ECF No. 24, 26. Plaintiffs opposed the motion to dismiss. ECF No. 27. In a decision dated September 28, 2018, the Court denied the City's motion to dismiss. ECF No. 32.

On June 17, 2022, the Court dismissed James Lynch's claims against the City because of his death. ECF No. 158.

### C.    Discovery and Information Exchange

Before filing the action, Class Counsel thoroughly investigated the underlying claims and collected significant factual information through pre-suit research and data gathering, including information provided by the Named Plaintiffs about their own experiences with DOC's intake, bail, and release practices. Greenberger Decl. ¶ 10.

During discovery, Class Counsel diligently pursued all information relevant to establishing Plaintiffs' claims, propounding numerous rounds of discovery requests, reviewing many thousands of documents Defendant produced (in total, Defendant produced almost 385,000 pages of documents).  Class Counsel's discovery requests sought relevant policies, practices, and directives of DOC; electronic and hard copy data maintained by DOC regarding inmate movement, including discharge dates and times; hard copy bail logs; electronic audit data showing updates to certain

fields in DOC's databases; data from electronic "RFID" bracelets worn by inmates while in DOC custody that contain information about inmate movement and discharge times; and information about the structure and capabilities of various electronic databases. Class Counsel often learned about the existence of data from the depositions of fact witnesses, requiring diligent follow-up with Defendant's counsel to seek that data. *Id.* at ¶ 15.

Class Counsel took ten depositions of Department of Correction employees, including two Rule 30(b)(6) depositions of Defendant City of New York. The depositions sought evidence of Defendant's policies, practices, and training regarding inmate movement and bail payment, and established the sources and types of data maintained by DOC on inmate movement and bail. *Id*. at ¶ 17.

Class Counsel subpoenaed documents from third parties relating to Defendant's bail and surety practices, including records of when New York City Health + Hospitals are contacted regarding bail payments and release orders for incarcerated individuals who are under medical care, and documents from the New York City Criminal Justice Agency regarding bail release delays. Class Counsel also submitted a FOIL request to New York State Department of Corrections and Community Supervision ("DOCCS") for information about Class Members who were also in the custody of the state prison system. *Id*. at ¶ 16.

With the agreement of Defendant's counsel, Class Counsel also spoke informally to DOC IT personnel and contractors regarding the type of information contained in DOC's databases and whether that information could be used to determine inmate discharge times. *Id*. at ¶ 18.

Class Counsel also hired a third-party service to transcribe thousands of bail receipts and had numerous logbooks transcribed in house.  In some cases, those hard copy documents (which themselves underestimated detention time) were the only record of bail payment or release. Class

Counsel had identified additional tranches of hard-copy documents with bail payment and release times when the Parties began settlement negotiations and discovery was stayed by mutual agreement. *Id*. at ¶ 19.

Class Counsel consulted with various experts and consultants, including experts on analyzing database management practices and the data provided by Defendant regarding putative Class Members in order to calculate detention times for individuals in DOC custody. Class Counsel worked with a data analyst consultant to match data across numerous datasets to determine the length and severity of overdetention in DOC facilities. *Id*. at ¶ 20.

The Parties also engaged in extensive meet-and-confers regarding discovery in this case and sought the Court's intervention on numerous occasions. The Court ordered a monthly status report from the Parties so as to make sure discovery production was not unduly delayed. The Parties filed over a dozen such letters, laying out their positions on a range of discovery and settlement disputes. *Id*. at ¶ 21.

### D.    Mediation and Settlement

While the Parties had preliminary settlement conversations for some time, those conversations picked up in earnest in January 2021. At that point the Parties began identifying a settlement framework, and agreed to pause further fact discovery, except as it related to identifying the amount of time individuals were incarcerated after their sureties were ready and willing to pay bail. *Id*. at ¶ 22.

Class Counsel conducted significant data analysis for the purpose of settlement negotiation. For example, Class Counsel estimated the number of individual instances of people being released from DOC custody on bail within the class period; analyzed the reliability and completeness of various DOC data on intake, bail payment, and release, including by checking it for internal consistency and cross-checking it against other sources of data; calculated an estimate of the

average time that people were detained during the class period, broken out by facility, year, and time of year, using data from DOC movement records, property records, bail receipts, RFID data, hard-copy logbooks, sign-in/sign-out sheets, MetroCard logbooks, and online bail payment records; analyzed how many Class Members were detained on one occasion as compared to multiple occasions; and compared City data about Class Members to state data obtained through FOIL, databases from other non-parties, and data from within DOC internal audits and records. *Id*. at ¶ 23.

The Parties had multiple sessions and telephonic conferences amongst themselves from January 2021 through October 2022, regarding the terms of the Settlement Agreement. *Id*. at ¶¶ 24-35.

By September 17, 2021, the Parties had reached an agreement in principle as to the $3,500 amount afforded to each instance of alleged over-detention with any settlement related costs (administration, notice, class representative bonuses, and attorneys' fees and costs) be paid by the City on top of the $3,500 per instance. *Id*. at ¶ 26.

DOC agreed that it would provide a list of all individuals who were released on payment of bail according to its electronic records and that individuals on that list would be presumptively considered part of the Settlement Class and eligible for a settlement award. Such people would not be required to submit proof of their incarceration in DOC custody, payment of bail, or delay in release, beyond the Attestation. *Id*. at ¶ 27.

The Parties negotiated the manner, extent, and nature of notice to potential Class Members extensively. Specifically, it was imperative to Plaintiffs that the Settlement administration and notice regime ensured we could identify and reach Class Members. Given that individuals incarcerated by the City of New York are generally poorer and more socially disadvantaged than

the City population as a whole, which means people are often more mobile and less likely to have settled addresses and contact information, and the fact that some people may have been released from DOC custody eight years ago, Class Counsel negotiated for detailed efforts to locate Class Members. Specifically, among other items, Plaintiffs negotiated that (a) the City would provide the Administrator specified data from other agency datasets about Class Members to facilitate locating Class Members; (b) the City would pay the Settlement Administrator to perform comprehensive individualized address research to locate Class Members, at a higher cost; (c) the City would identify sureties (those who paid a Class Member's bail) and the sureties will receive notice if the relevant Class Member does not submit a claim form in the initial period; (d) the City would support Plaintiffs' attempts to obtain data about Class Members from DOCCS; (e) the Administrator will encourage those who submit claims to tell their friends about the Agreement, as Class Members may know other potential Class Members; (f) the City agreed to post Summary Notices in places Class Members or those in their community may see them, including in DOC facilities, in certain locations and offices of the NYC Human Resources Administration, in field offices of the NYC Administration for Children's Services, and in the NYC Department of Probation's adult supervision office for each borough of New York City; (g) the City agreed to pay for a ten-week multilingual advertising campaign online, in newspapers, on television and radio, and at fixed locations around the City, with a further agreement that Rust would evaluate the success of this plan partway through the campaign and amend it as needed. *Id*. at ¶ 29. Plaintiffs believe that many of these administration and notice procedures have not been done in prior civil rights settlements with the City; Plaintiffs negotiated for these innovations to locate this hard-to-locate class and facilitate their participation in the settlement. *Id.*

The Parties also negotiated several other key terms of the Settlement Agreement. For

example, Class Counsel successfully negotiated and obtained an agreement from Defendant to limit liens and judgments that the City could deduct from Class Members' monetary awards. Class Counsel also successful negotiated and obtained Defendant's agreement to pay for benefits counseling for any Class Member who sought it that would help Class Members and their families identify which if any of their benefits might be affected by the monetary payment through this settlement agreement and provide them with financial planning advice to assist in not inadvertently losing such assistance. *Id*. at ¶¶ 28, 56, 65-66.

In parallel to negotiating these terms, as noted above, Class Counsel sought up-to-date contact information for Class Members who are or have been incarcerated in State custody from DOCCS and the New York State Office of Information Technology ("ITS"). Class Counsel subsequent moved for an order to compel DOCCS and ITS to respond to Class Counsel's document subpoena. Magistrate Judge Moses informed DOCCS and ITS that she was inclined to order them to produce the data Class Counsel sought. Judge Moses ordered the Parties' data experts meet-and-confer regarding the capabilities of ITS systems that held Class Member data. Class Counsel and ITS subsequently agreed that ITS would produce social security number information, as well as last known address and phone number information, for Class Members that are or have been in DOCCS custody, within certain agreed-upon parameters. *Id*. at ¶¶ 37-38.

On April 14, 2022, the Parties reached agreement on a non-binding term sheet. Thereafter, on July 19, 2022, the Parties participated in a settlement conference before the Hon. Barbara Moses regarding several substantive issues and unresolved terms of the Settlement Agreement. *Id*. at ¶¶ 32-35.

The Parties ultimately reached an agreement on all terms of a settlement agreement, which was executed on October 21, 2022. Ex. 1.

II.    **SUMMARY OF THE SETTLEMENT TERMS**

    A.    **Overview**

As detailed further below, pursuant to the Settlement Agreement, Defendant has agreed to pay $3,500 for each "Instance of Release" of a Class Member during the Class Period (from October 4, 2014 to October 21, 2022). Ex. 1 at ¶¶ 11, 22, 92, 94.

Plaintiffs' awards will be paid after the Court provides final approval of the Settlement Agreement and that final approval order becomes "final" (i.e., the date of the final approval order if no objection has lodged a timely objection, or after all appeals by an objector have been resolved, if any). *Id.* at ¶¶ 30, 93.

    B.    **The Settlement Class**

Pursuant to the Settlement Agreement, the Parties have agreed to seek the preliminary certification, pursuant to Fed. R. Civ. P. 23, of the following settlement class (the "Settlement Class"): All people who were: (a) in the Custody of DOC; (b) were on at least one occasion released from DOC Custody upon payment of Bail during the Class Period; and (c) had a delay in their release from Custody after Bail had been paid. *Id.* at ¶ 49.

    C.    **Monetary Relief for the Settlement Class**

        1.    **Award Amounts**

The Settlement Agreement is structured so that each Plaintiff's monetary award is calculated at a flat rate of $3,500 for each "Instance of Release" during the Class Period (from October 4, 2014 to October 21, 2022). *Id.* at ¶¶ 11, 22, 92, 94. If a Plaintiff was released multiple times on bail from DOC custody during the Class Period, their settlement will be calculated by multiplying $3,500 by the instances of release during the Class Period. *Id.* at ¶¶ 11, 95. If a Class Member files a valid claim but fails to cash the check for their settlement award, the settlement award does not revert back to Defendant. Instead, Rust will reissue the check and then it will

escheat so that a Class Member can seek the award belatedly.

The structure of the monetary terms of the Settlement Agreement means, therefore, that there is no fixed settlement amount. Instead, the total amount to be paid by Defendant will be determined by the number of Valid Claims submitted by Plaintiffs and the corresponding Instances of Release. Defendant has represented that, during the Class Period, there were 71,815 individuals with unique New York State ID numbers ("NYSIDs) released on bail; Plaintiffs are analyzing Defendant's proposed Class List. *Id.* at ¶ 20.

Any open child support lien in New York state will be deducted from a Class Member's award (with the City providing prior notice to that Plaintiff that they are the subject of a child support lien). The Parties have agreed to work in good faith to not have the City's Department of Finance ("DOF") assert any liens or judgments against any Award Amount. In no event shall DOF seek to reduce a Class Members' settlement payments based on any lien other than docketed parking judgments and, in that situation, DOF will not seek to reduce the Class Members' settlement payments by more than $500 in docketed parking judgment debt. *Id.* at ¶¶ 74-76.

### 2. Eligibility

Plaintiffs are eligible for a payment under the Settlement Agreement if they submit a "Valid Claim" and sign the following "Attestation": "I declare that I was released on bail from a jail run by the New York City Department of Correction on at least one occasion between October 4, 2014 and October 21, 2022. I reasonably believe that it may have taken at least three (3) hours after my bail was paid before I was released from custody." *Id.* at ¶ 10. If a Plaintiff does not know when their bail was paid, or if they do not know when they were released, they may still sign the Attestation.  Plaintiffs will not be required to provide any additional proof of their incarceration in DOC Custody, the length of their incarceration, or the length of their over-detention. *Id.* at ¶ 92. If an individual is contained on the "Class List" prepared by Defendant, they will be presumptively

considered to have been released from DOC Custody upon payment of Bail during the Class Period. *Id.* at ¶ 20. In order to be timely, a claim must be submitted by the Bar Date, which will be no sooner than 175 days after the Court's preliminary approval of the Settlement Agreement. *Id.* at ¶ 128.

The Settlement Agreement also permits the submission and payment of untimely claims as long as they are filed within three months after Defendant deposits the Claimant Total (i.e., the awards for Plaintiffs that filed timely Valid Claims) with the Administrator. *Id.* at ¶ 97. Plaintiffs submitting untimely claims must establish good cause for submitting the untimely claim, including but not limited to the illness or death of a Class Member or member of Class Member's family, the incarceration or detention of a Class Member, or the failure to receive a notice packet, mailing or technical issues generally, including without limitation undelivered claim forms, technical difficulties or problems with uploading the claim, problems with tickler or reminder systems, translation issues, or any other barriers to submitting a timely claim form. *Id.* The Administrator will decide whether the Plaintiff has established good cause, and can ask the Plaintiff the basis for the untimely claim, but will not require a written explanation or evidentiary support or proof to establish good cause. *Id.*

The Settlement Agreement also permits the duly-appointed legal representatives of deceased Plaintiffs to recover monetary relief for which the Plaintiff would have been eligible. *Id.* at ¶ 100. Legal representatives who can provide proof of the Plaintiff's death and appropriate documentation that they have been properly appointed a representative of the Plaintiff's estate will be permitted to sign the Attestation and submit a claim. *Id.*

The appointed estate administrators for James Lynch, a former Named Plaintiff who died during the pendency of this suit, are eligible to submit a Valid Claim and collect the settlement

payments Mr. Lynch would have been entitled to as a class member. *Id.* at ¶ 101.

### 3.     Releases

Class Members who do not file valid requests for exclusion from the Settlement Class will be bound by the terms of the Settlement Agreement, including a release of all claims that they have, could have had, or could have against Defendant based on the factual allegations in the Complaint (ECF No. 1), including but not limited to alleging unconstitutional over-detention from a DOC facility after payment of bail during the Class Period. *Id.* at ¶¶ 104-105, 120-121.

### D.     Service Awards, Attorneys' Fees and Costs, and Administrative Costs

### 1.     Administrative Costs

The Parties selected Rust Consulting, Inc. ("Rust") as the Administrator, which has extensive experience administering class action agreements. Greenberger Decl. ¶ 53; Janowicz Decl. ¶¶ 1-2; Janowicz Decl. Ex. A (curriculum vitae outlining Rust's services and experience). Under the terms of the Settlement Agreement, the Administrator's administrative costs, costs of direct notice, and costs of publication notice will be paid by Defendant directly to the Administrator and will be paid separately from the awards to the Class Members. Ex. 1 at ¶¶ 80-86 & Appendix A at 1. The Administrator has agreed to cap the administrative costs and the costs of the direct notice at $1,091,388. Ex. 1 at ¶ 80 & Appendix A at 1. The administrative costs include $423,000 allocated for providing benefits counseling to Class Members, as the Administrator will offer Class Members the option of speaking with a government benefits consultant to discuss the effect of any award under the Settlement Agreement on their need-based government benefits, explain the options available to protect those benefits before they receive a settlement award, and help preserve their benefits if they choose to do so. Ex. 1, Appendix A at 1; Ex. 1 at ¶ 78; Janowicz Decl. at ¶ 58 & Ex. G at 4.

Separately, and as further described *infra* Section IV, Defendant will pay for two waves of

publication notice overseen by the Administrator: $700,000 in an initial media outreach "wave";

and an amount to be agreed upon by the parties in consultation with the Administrator for

subsequent media "wave(s)" that shall generally not exceed $350,000. Ex. 1 at ¶ 81. If, however,

the direct notice and administrative costs are less than $1,091,388, any remaining funds may be

used in subsequent media "wave(s)" where the Administrator recommends that additional media

outreach would assist in reaching class members in subsequent media "wave(s)." *Id.* If the

Administrator recommends that additional funds for direct notice or administrative costs (beyond

the caps), or media outreach beyond the agreed-upon "wave(s)," would assist in reaching class

members or administering the settlement, the parties will confer on increases in the budget and, if

the Parties cannot agree, they may seek the Court's intervention. *Id.* ¶ at 82.

In addition to the notice program described *infra* Section IV, Rust's duties administering

the Settlement Agreement include: (1) locating Class Members; (2) issuing notice, including

information about the right to object or Opt Out of the settlement; (3) distributing Claim Packets

to and receiving executed original Claim Forms from Class Members; (4) establishing and

administering the QSF and upon conclusion of the process, closing the Fund; (5) determining

eligibility for awards on the basis of information provided by counsel for the Parties and the Class

Members, validating the claims, and providing Class Counsel and Defendant's Counsel a list of

those persons found preliminarily eligible every 30 days; (6) calculating the amounts of awards;

(7) issuing and mailing payments to eligible Class Members, and issuing and filing all required tax

forms and statements; (8) responding to inquiries from Class Members about this Agreement and

the procedures contained herein, including by the use of a toll-free number and a website; (9)

collating all objections to the Agreement for Class Counsel and Counsel for Defendant; (10)

creating a database of Class Members who have filed timely and valid Claim Forms; (11) creating

a database of Opt-Outs; (12) coordinating and advancing payment for publication notice per paragraph 81; (13) providing the Parties with regular bills and a final accounting; and (14) to the extent not listed in the Settlement Agreement, the tasks enumerated in the Administrative Proposal attached as Appendix A to the Settlement Agreement. Ex. 1 at ¶ 63 & Appendix A; Janowicz Decl. ¶ 60; Greenberger Decl. ¶ 54.

### 2. Service Awards

In accordance with the Settlement Agreement, Plaintiffs will request in their Motion for Final Approval that the Court approve service awards for the two Named Plaintiffs in the amount of $20,000 each, in recognition of the services they rendered on behalf of the class. Ex. 1 at ¶ 90. Those services included providing detailed factual information about their experiences in DOC custody, including Defendant's intake, bail, and release practices. Named Plaintiffs also approved key terms of the settlement, and were available for settlement conferences. Greenberger Decl. ¶ 52. The Court need not decide at this juncture whether the service awards Plaintiffs will request are reasonable; Plaintiff will brief that question in advance of the fairness hearing.

### 3. Attorneys' Fees and Costs

Prior to the fairness hearing, Class Counsel will apply for an award of attorneys' fees and costs. Class Counsel's fees and costs will not be deducted from any settlement fund or settlement payments to Class Members, although the benefit to the Class will be a factor in Class Counsel's fee application. The individual awards to Class Members will be calculated based on the number of instances of release on bail within the Class Period. Ex. 1 at ¶¶ 11, 92, 93. The City has agreed to pay Class Counsel the attorneys' fees and costs in the amount awarded by the Court that will be separate and apart from the payments to Class Members. Class Counsel will seek attorneys' fees and expenses that are no higher than the *lower* of (a) 10% of the Potential Benefit to the Class, or (b) 25% of the Actual Benefit to the Class. *Id.* at ¶ 79. "Potential Benefit to the Class" means the

15

total of attorneys' fees and expenses, Administrative Costs, class representative service awards, and $3,500 times the number of Instances of Release in the Class Period. *Id.* at ¶ 39. "Actual Benefit to the Class" means the total of attorneys' fees and expenses, Administrative Costs, class representative service awards, and $3,500 times the number of claimed instances of release actually received by the Administrator. *Id.* at ¶ 7. Class Counsel may seek fees that are lower than this cap. *Id.* at ¶ 79. Defendant reserves the right to respond to the attorneys' fees application, including that Class Counsel's fees should not be awarded based on a percentage of the Actual/Potential Benefit and should instead be assessed and awarded based on a lodestar calculation, with the possibility of an additional multiplier, given the nature of the Settlement Agreement. *Id.*

The Court need not decide attorneys' fees and costs now; pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Class Counsel will move for attorneys' fees and costs along with their Motion for Final Approval of the Settlement. The Settlement Agreement provides that the resolution Class Counsel's application for attorneys' fees and costs, including any appeals of orders relating to attorneys' fees and costs, shall not delay the final approval of agreement and shall not delay the payments to Class Members, administrative costs, or class representative service awards. *Id.* at ¶¶ 30, 79.

## III.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action

litigation, and it should therefore be encouraged.").[2] "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012); *see also Diaz v. E. Locating Serv., Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (giving "weight to the parties' judgment that the settlement is fair and reasonable"). The Parties here acted responsibly in reaching a settlement in this case.

To grant preliminary approval of a settlement, a court must find that it "will be likely able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (standard for preliminary approval). In other words, the court "must consider the factors relevant to final approval and certification, and it must conclude that it is likely to find that those factors are satisfied." *Gordon v. Vanda Pharms. Inc.*, No. 19 Civ. 1108, 2022 WL 4296092, at *2 (E.D.N.Y. Sept. 15, 2022). The factors relevant to final approval under Rule 23(e)(2) are: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). Courts in this district also consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) that, prior to the 2018 amendments to Rule 23, governed the analysis of whether a settlement was "fair, reasonable, and adequate." *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692; *Gordon,* 2022 WL 4296092, at *3. The *Grinnell* factors

---

[2] All citations have been "cleaned up."

are addressed where relevant below.[3]

### A.   Adequacy of Representation

Rule 23(e)(2)(A) requires the Court to analyze whether "the class representatives and class counsel have adequately represented the class." In determining the adequacy of class representatives and counsel, courts consider "whether (1) plaintiff's interests are antagonistic to the interest[s] of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs., Inc. v. AG. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007); *Mikhlin v. Oasmia Pharm. AB*, No. 19 Civ. 4349, 2021 WL 1259559, at *4 (E.D.N.Y. Jan. 6, 2021).

Named Plaintiffs Lynch and Jones have common interests with other members of the class, and no interests that are antagonistic to the other class members. Named Plaintiffs Lynch and Jones suffered the same "general injury as the rest of the class"—over-detention caused by DOC's delay in releasing them after they posted bail and were entitled to release. They seek the same relief as the other class members, namely, damages for the length of their over-detention. ECF No. 1 at ¶¶ 119(g), 132, 138. Given their common injuries and the common remedies sought, the Named Plaintiffs have an "interest in vigorously pursuing the claims of the class." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692.

---

[3] The *Grinnell* factors are (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range of reasonableness of the settlement to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

Further, Class Counsel are qualified, experienced, and able to conduct this litigation, assess the strengths and weaknesses of the case, and negotiate settlement. They engaged in successful motion practice to defeat a motion to dismiss. As further described above (*supra* Section I.C), over the course of two and a half years, they sought and obtained hundreds of thousands of pages of electronic and hard copy data, as well as fact witness depositions and third-party discovery, in order to document the movement of inmates in DOC custody, DOC's receipt of bail payments, and DOC's delay in releasing inmates after bail has been paid. Much of the discovery sought was heavily-contested. After obtaining the electronic and hard copy data, class counsel identified and retained experts in data analysis to conduct complex calculations of massive datasets that were crucial for prosecuting the merits of the case and for supporting Plaintiffs' position in settlement negotiation. Greenberger Decl. ¶¶ 15-21.

Class Counsel are experienced attorneys with strong reputations and expertise in civil rights law: Emery Celli Brinckerhoff Abady Ward & Maazel LLP has been recognized as having a "wealth of experience handling complex class actions," and have been found as adequate by other courts in the context of preliminary class action settlement approval. *See Rosenfeld v. Lenich*, No. 18 Civ. 6720, 2021 WL 508339, at *5 (E.D.N.Y. Feb. 11, 2021); *Wise v. Kelly*, 620 F. Supp. 2d 435, 445 (S.D.N.Y. 2008) (characterizing ECBAWM as "one of the most competent, successful, and reputable civil rights firms practicing in this Court"). In at least two class actions where ECBAWM served as lead counsel, courts described the firm as "preeminent." *Brown v. Kelly*, 244 F.R.D. 222, 233 (S.D.N.Y. 2007), *aff'd in part, vacated in part on other grounds*, 609 F.3d 467 (2d Cir. 2010); *Betances v. Fischer*, 304 F.R.D. 416, 428 (S.D.N.Y. 2015). Courts have taken "judicial notice of [Emery Celli]'s high reputation, finding it to be one of the most competent, successful, and reputable civil rights firms practicing in this Court." *Wise,* 620 F. Supp. at 445.

Romano & Kuan, PLLC similarly has a wealth of experience in civil rights litigation, *see, e.g., Camacho, et al. v. City of New York*, No. 19 Civ. 11096 (DCL); *Cosme v. City of New York,* No.14 Civ. 1653 (JMF), and in New York State criminal practice and procedure.

KLLF possesses broad and deep expertise in complex federal civil rights litigation, and currently represents several putative classes in civil rights actions pending in federal courts across New York State. *See Sierra v. City of New York*, No. 20 Civ. 10291 (S.D.N.Y.) (putative class action alleging constitutional violations by the NYPD against demonstrators protesting in the Bronx against police brutality in the wake of George Floyd's murder); *Caballero v. N.Y.S. Dep't of Corr. & Comm'ty Supervision*, No. 20 Civ. 1470 (N.D.N.Y.) (putative class action alleging that the New York State Department of Corrections and Community Supervision unlawfully barred prisoners with disabilities from accessing an early release program); *Yeend v. Akima Global Servs., LLC*, No. 20 Civ. 2181 (N.D.N.Y.) (putative class action alleging human trafficking claims and forced labor practices by a corporation contracted to operate a civil immigration detention facility). David Lebowitz, a KLLF partner, is a former ECBAWM attorney who has represented the putative class since this case was filed.

### B.      Arm's Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness, i.e., that "the proposal was negotiated at arm's length." In evaluating procedural fairness, the court must examine "the negotiating process leading to settlement." *Wal-Mart Stores*, 396 F.3d at 116; *see D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). "A court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Id*. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length

20

negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116.

Here, negotiations between the Parties were lengthy, complex, vigorously contested, and always conducted at arm's length. As set forth in more detail above (*supra* Section I.C), the Parties engaged in extensive discovery, including document discovery, depositions, and third-party subpoenas seeking the relevant policies, practices, and directives of DOC; policies, practices, and training documents relating to DOC's record-keeping and electronic database management systems; and electronic and hard copy data maintained by DOC regarding the movement of incarcerated individuals. Greenberger Decl. ¶¶ 15-23. While discovery is still not complete, the Parties certainly reviewed enough material to have a very good sense of the strength and weaknesses of each other's' positions.

As set forth in more detail above (*supra* Section I.D), the Parties—who were represented by experienced, highly capable counsel—engaged in more than 21 months of protracted settlement negotiations among themselves, and participated in a settlement conference before Magistrate Judge Barbara Jones to resolve key settlement terms. *Cf. D'Amato*, 236 F.3d at 85 ("[A] court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *Lea v. Tal Educ. Grp.*, No. 18 Civ. 5480, 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021) (same). The Parties exchanged multiple draft settlement proposals, discussing terms in detail by telephone conference and email, and negotiating over issues such as the amount of class member's monetary settlement award, the structure and timing of payment of individual awards, the reduction of awards by child support liens and docketed parking judgments, the scope and method of class notice, the amount Defendant would pay to fund class notice, providing counseling to class members regarding the impact of the

award on their public benefits, obtaining address and email information for class members from City agencies, and many other issues. Greenberger Decl. ¶¶ 22-38, 66. The Parties' "vigorous" litigation of the case and the settlement terms demonstrates their lack of collusion. *Gordon,* 2022 WL 4296092, at *4.

Because the settlement process here was fair, arms-length and collusion-free, the resulting agreement is presumed to be fair, adequate, and reasonable.

### C.      Adequacy of Relief

Rule 23(e)(2)(C) requires examining whether relief for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). *In re GSE Bonds Antitrust Litig.*, No. 19 Civ. 1704, 2019 WL 6842332, at *2 (S.D.N.Y. Dec. 16, 2019).

### D.      Costs, Risk, Delay of Trial and Appeal

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense, risk, and delay and ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato*, 236 F.3d 78.

This case is no exception. With a class period dating back to 2014 and significant amounts of relevant electronic and hard copy data requiring analysis, this case is extraordinarily complex. Further litigation here would cause additional expense and delay. Though the case has been pending since October 2017, Plaintiffs have yet to depose certain key witnesses from among the Defendant, Defendants have not conducted depositions, and discovery is far from complete.

22

Defendant has yet to provide certain electronic and hard copy records demonstrating the movement of individuals in DOC custody, which could reveal more information about the length of over-detention after Class Members paid bail. Greenberger Decl. ¶¶ 61-62.

Even once discovery were to be completed, the Parties envision summary judgment and class certification motions raising many technical and novel issues of law, such as whether the length of their over-detention violates the Constitution, proving the length of overdetention, and whether Defendants would challenge the suitability of class certification under Federal Rule of Civil Procedure 23, such as by arguing too many individual issues exist to maintain the class. While Plaintiffs believe the class would be certified and summary judgment denied, both motions present significant risks to the class. *Id*. at ¶ 63.

If Plaintiffs succeed on certifying the class and defeating summary judgment, a fact-intensive trial would likely be necessary to determine both liability and damages. A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. A trial would be lengthy and complex. While Plaintiffs believe that they could ultimately establish both liability and damages, this would require significant factual development, requiring hundreds of additional hours of discovery, plus the time and resources required to litigate dispositive motions and prevail at trial, and then prevail again on the inevitable appeal. *Id*. at ¶ 64. Class members would not obtain relief for years. The settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. *Id*. at ¶ 62; *Lea,* 2021 WL 5578665, at *9 (preliminary approval appropriate where it brought to a close litigation "that could have lasted several more years and cost hundreds of thousands of dollars in attorneys' fees and expenses and brings immediate relief to the class").

Further, although Plaintiffs believe their case is strong, it is subject to considerable risk,

including the risk of obtaining and maintaining class certification through trial. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Defendants could defeat class certification, win a dispositive pre-trial motion, or obtain favorable verdict at trial—in those situations Class Members would be left with no relief at all. Even if Plaintiffs win a favorable verdict and an award of damages, the verdict or damages award could be reversed or reduced on appeal. In contrast, "[t]he proposed settlement benefits each plaintiff in that he or she will recover a monetary award immediately, without having to risk that an outcome unfavorable to the plaintiffs will emerge from a trial." *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).

Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. Therefore, Rule 23(e)(2)(C)(i), the first *Grinnell* factor (the complexity, expense, and likely duration of the litigation), the fourth *Grinnell* factor (the risks of establishing liability), the fifth *Grinnell* factor (the risks of establishing damages), and the sixth *Grinnell* factor (the risks of maintaining the class action through the trial) all weigh in favor of approval.

### 1. Effectiveness of the Proposed Method of Distributing Relief

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." While the claims processing method "should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *In re Payment Card*, 330 F.R.D. at 40 (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). "To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized — namely, it must be fair and adequate.... [a]n allocation formula need only have a reasonable,

24

rational basis, particularly if recommended by experienced and competent class counsel." *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 40 (E.D.N.Y. 2019) (citing *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014) ("When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis.").

The allocation of settlement awards to Class Members is straightforward: their Award Amount consists of $3,500 multiplied by their Instances of Release during the Class Period. Each Instance of Release is awarded the same amount of money. Because there is no common settlement fund from which all claims must be apportioned, the Award Amount will not be reduced by the number of claims submitted by Class Members.

The claims processing method uses well-established, effective procedures for receiving, processing, and validating claims. *See Lea,* 2021 WL 5578665, at *11. As described *infra* (Section IV), the Administrator will distribute hard copy Claim Forms in English and Spanish to Class Members where it provides direct notice by first-class mail to those Class Members. Ex. 1 at ¶ 51. The Administrator will also make the Claim Form available on the settlement website. Class Members can submit claims either by returning the hard copy Claim Form in the envelope with pre-paid postage provided to them, or by submitting a claim online through the settlement website. The Claim Form is available on the website in English, Spanish, Russian, and Chinese. Class Members need not provide proof they were detained by DOC, that they paid bail, or when they were released from DOC custody; they need only sign the Attestation. *Id.* at ¶ 92. If the Class Member is contained in the Class List provided by DOC, they will be recognized as a member of the class and entitled an award of $3,500 per instance of release from DOC custody during the

Class Period. *Id.* at ¶¶ 20, 92, 94.

Further, the Settlement Agreement recognizes deceased Class Members' rights to recovery. *Id.* at ¶ 100. Duly-appointed legal representatives for deceased Class Members are also able to submit claims, with proof that they are the legal representatives. *Id.*

The Settlement also ensures that Class Members are not disadvantaged by failing to meet the claims form deadline if they have good cause.  Class members can submit untimely claims upon a showing of good cause (as determined by the Administrator) for up to three months after the City pays for the timely claims. *Id.* at ¶¶ 96-97.

If the Court grants Final Approval to the Settlement Agreement, the Administrator will then distribute checks in the Award Amount to Class Members who have submitted valid claims. *Id.* at ¶ 93. If those checks are returned to the Administrator, the Administrator will conduct additional address searches, reissue and resend checks. *Id.* at ¶ 102.

### 2.       The Terms of Any Proposed Award of Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment." Here, Class Counsel's attorneys' fees and costs will not be deducted from the Class Members' Award Amounts. Instead, Defendant has agreed to pay Class Counsel's attorneys' fees and costs separately from the Award Amounts being paid to Class Members.  The Court need not evaluate the appropriate fee award now.  Plaintiffs will brief that question in advance of the fairness hearing, at which point the Court will have substantially more information about the number of Class Members who submitted claims by the deadline for timely claims and thus the Actual Benefit to the class. *See In re Take Two Interactive Sec. Litig.*, No. 06 Civ. 1131, 2010 WL 11613684, at *11 (S.D.N.Y. June 29, 2010) (granting preliminary approval of settlement agreement without consideration of attorneys' fees as such fees would be determined by court order after the fairness hearing and final approval of the agreement).

As detailed above, the Parties have agreed that, at the time of the final approval hearing, Class Counsel will seek attorneys' fees and expenses up to a cap of the lower of (a) 10% of the Potential Benefit to the Class, or (b) 25% of the Actual Benefit to the Class. Ex. 1 at ¶ 79. Class Counsel may seek fees that are lower than this cap. *Id.* Defendant reserves the right to respond to the attorneys' fees application, including that Class Counsel's fees should not be awarded based on a percentage of the Actual/Potential Benefit and should instead be assessed and awarded based on a lodestar calculation, with the possibility of an additional multiplier, given the nature of the Settlement Agreement. *Id.*

### 3.    Any Agreement Required to be Identified Under Rule 23(e)(3)

Rule 23(e)(2)(C)(iv) requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." The Parties have not entered into any agreements other than the Settlement Agreement that has been submitted for approval.[4] Accordingly, this factor poses no obstacle to preliminary approval. *Rosenfeld,* 2021 WL 508339, at *7.

### 4.    Other *Grinnell* Adequacy Factors

The second *Grinnell* factor—the reaction of the class to the settlement—is neutral. The Court should more fully analyze this factor after notice is issued and Class Members are given the opportunity to opt out or object. At this early stage in the process, Named Plaintiffs have expressed their approval of the settlement by agreeing to the settlement agreements. Greenberger Decl. ¶ 52. *Parker v. City of New York*, No. 15 Civ. 6733, 2017 WL 6375736, at *6 (E.D.N.Y. Dec. 11, 2017) (reaction of class to the settlement may only be evaluated after notice of the proposed settlement

---

[4] The Parties' April 14, 2022 Term Sheet was non-binding and thus not an "agreement made in connection with the proposal."

has been sent to the class and the time for objections has passed).

The third *Grinnell* factor—the stage of the proceedings and the amount of discovery completed—favors approval of the Settlement Agreement. The relevant inquiry "is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *4. *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."). As described *supra* (Section I.C), Plaintiffs obtained a voluminous amount of hard copy and electronic discovery from Defendant through contested motion practice, conducted numerous depositions, and sought information and documents from third parties. Plaintiffs used this information not only to assemble proof of Defendant's policies and practices, but also to understand the strengths and weaknesses of their liability and damages claims. As such, Plaintiffs possess adequate information about the merits of their claims to assess Defendant's position in settlement negotiations. *In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *4; *Nichols v. Noom, Inc.*, No. 20 Civ.3677, 2022 WL 2705354, at *9 (S.D.N.Y. July 12, 2022) (discovery involved review of over one million pages of documents, complex data sets, numerous meet and confer sessions, court hearings and motion practice, and a dozen fact depositions, favored settlement). In addition, the thoroughness of the discovery performed here favors preliminary approval. *See, e.g.*, *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *5 (S.D.N.Y. Mar. 3, 2010) (finding that the parties' "efficient, informal exchange of information" was enough discovery to recommend settlement approval). Courts often grant final approval of class settlements in cases where the parties conducted less discovery than in this case. *See, e.g.*, *Matheson v. T-Bone Rest., LLC*, No. 09 Civ 4214, 2011 WL

6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval where parties engaged in informal information exchange with no depositions because "Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims" and "[t]he parties' participation in a day-long mediation allowed them to further explore the claims and defenses"). Here, where Class Counsel engaged in extensive document discovery and consulted with experts, this factor unquestionably favors preliminary approval.

The seventh *Grinnell* factor—the ability of the defendants to withstand a greater judgment—does not preclude approval of the Settlement Agreement. Defendant, as a municipality, may be able to withstand a greater judgment. Nevertheless, courts have not found this factor to bar preliminary and final approval of class actions settlements involving the City of New York. *See, e.g.*, *Parker v. City of New York*, No. 15 Civ. 6733, 2018 WL 6338775, at *6 (E.D.N.Y. Dec. 4, 2018).

The eighth *Grinnell* factor—the range of reasonableness of the settlement in light of the best possible recovery—and the ninth *Grinnell* factor—the range of reasonableness of the settlement to a possible recovery in light of all the attendant risks of litigation—both favor approval of the Settlement Agreement. These factors are "often combined for the purposes of analysis." *In re Payment Card*, 330 F.R.D. at 47-48. "In considering the reasonableness of the settlement fund, a court must compare the terms of the compromise with the likely rewards of litigation." *Id.* at 48. The range of reasonableness for a settlement is "a range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores,* 396 F.3d at 119. Here, the settlement amount falls within the range of reasonableness in light of the best possible recovery: as awards for over-detention of individuals in criminal custody can range from a few hundred dollars to many

29

thousands of dollars, an award of $3,500 is reasonable, especially considering that courts frequently approve class settlements even where the benefits represent "only a fraction of the potential recovery." *In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d 467, 483–85 (S.D.N.Y. 2009) (approving settlement that provided only a "miniscule" 2% of defendants' maximum possible liability and observing that "[t]he Second Circuit has held that a settlement amount of even a fraction of the potential recovery does not render a proposed settlement inadequate"); *Hall v. Children's Place Retail Stores, Inc.*, 669 F. Supp. 2d 399, 402 n. 30 (S.D.N.Y. 2009) (approving settlement that amounted to 5-12% recovery of provable damages); *In re Crazy Eddie Secs. Litig.*, 824 F. Supp. 320, 324 (E.D.N.Y. 1993) (approving settlement that awarded class members between 6 and 10 cents for every dollar lost).

Further, the Settlement Agreement limits the liens and judgments that can be asserted against a Class Member's Award Amount, and offers valuable benefits counseling to Class Members on how an award may affect their public benefits, if any—both these terms provide financial benefit to Class Members that may not have been available to Class Members had they succeeded at trial. Greenberger Decl. ¶¶ 65-66. Finally, there are significant risks of litigation— loss at the summary judgment stage, loss of class certification, loss at trial, or loss on appeal—that would result in Class Members receiving no recovery at all. *Id.* at ¶¶ 63-64. Therefore, as compared to the best possible recovery and as compared to possible recovery in light of the risks of litigation, the Settlement Agreement provides better recovery to Class Members. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum").

### E.     Equitable Treatment of Class Members

After an adequacy assessment, Rule 23(e)(2)(d) finally requires the Court to consider whether "the proposal treats class members equitably relative to each other." Here, Class Members

are treated equitably relative to each other in that they each receive the same amount—$3,500—for each Instance of Release from DOC custody during the Class Period.

The structure of the Settlement Agreement allows each Class Member to be eligible for a $3,500 settlement award if they can truthfully sign the Attestation and submit a claim form. While some Class Members may have been detained longer than others after their bails were paid, most Class Members do not possess the documentation necessary to show that they were released on bail from DOC custody during the Class Period; to show exactly when their bail was paid; or to show when they were released from DOC custody. DOC, however, does appear to have reliable records showing whether an individual was in DOC custody during the Class Period and whether they were released on bail. Based on the data DOC provided and Plaintiffs' counsel were able to analyze, nearly every Class Member was held for three or more hours after their bail was paid. It would be burdensome, inefficient, and unfair to require Class Members to submit (largely non-existent) documentation of their custody, release on bail, and delayed release. Therefore, the Settlement Agreement solves these documentation concerns by awarding each Class Member a set amount for each instance of release during the Class Period, provided they sign the Attestation and submit a valid claim form. And if a Class Member is entitled to claim an award for multiple instances of release during the Class Period, the structure of the Settlement Agreement ensures that they receive the same flat $3,500 payment for each instance of release. Greenberger Decl. ¶ 60.

***

Given the legal and factual disputes that persist, the settlement represents a substantial recovery for class members. Application of Rule 23(e)(2) and the *Grinnell* factors weigh in favor of issuing preliminary approval of the settlement. In the event that a substantial number of

31

objectors come forward with meritorious objections, the Court can reevaluate its determination

then. Because the settlement, on its face, is "fair, adequate, and reasonable, and not a product of

collusion," *Frank*, 228 F.R.D. at 184, the Court should grant preliminary approval.

## IV.   CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE

Preliminary approval should be granted because the Court is likely to certify the Settlement

Class for purposes of judgment. *See In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *5 (in

order to preliminary approve settlement proposal, court must also find that find that it will likely

be able to certify the class for purposes of judgment on the proposal).

### A.   Rule 23(a) is Satisfied

The four prerequisites for class certification under Rule 23(a) are met here: numerosity,

commonality, typicality, adequacy of representation, and ascertainability. *Rosenfeld*, 2021 WL

508339, at *9.

Numerosity is satisfied because Defendant has represented that, during the Class Period,

there were 71,815 individuals with unique New York State ID numbers ("NYSIDs) released on

bail. Greenberger Decl. ¶ 6; *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.

1995) ("[N]umerosity is presumed at a level of 40 members.").

The Settlement Class raises common questions of law and fact, including whether their

release from DOC custody after their bail was paid was delayed, whether any such delay was the

result of DOC's policies and practices, and whether the policies and practices resulting in delays

in release violate federal and state law. Greenberger Decl. ¶ 11. The claims of the Named Plaintiffs

are typical of the claims of the Settlement Class in that Jones and Spencer seek monetary damages

for the delays in their release from DOC custody after their bail was paid. *Id*. Because all Class

Members possess the same kinds of claims against the same Defendant, arising out of the same

pattern of conduct, and alleging the same violation of law, they can meet the commonality and

typicality requirements. *Rosenfeld*, 2021 WL 508339, at *9; *Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."); *Shahriar v. Smith & Wollensky Restaurant Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) ("Typicality requirement is satisfied when each class member's claim arises from the same course of events and makes similar legal arguments to prove the defendants' liability.").

The Named Plaintiffs will fairly and adequately protect the interests of the Settlement Class: they have supported the prosecution of this litigation for over five years, deferring any individual recovery during that time, and will be paid their Award Amount only after the Settlement Agreement receives final approval and at the same time as the other Class Members. Ex. 1 at ¶¶ 89-90; Greenberger Decl. ¶ 52. As described *supra* (Section III.A), Class Counsel is qualified, experienced, and able to conduct the litigation and oversee settlement administration. *See Nichols,* 2022 WL 2705354, at *5.

Finally, the Settlement Class is ascertainable. Whether an individual was in DOC custody, whether they have been released on bail from DOC custody, and whether their release occurred within the Class Period are based on objective criteria that can be determined from DOC's records. DOC will generate the list of presumptive Class Members from its database by identifying those individuals who were released on bail during the Class Period. Ex. 1 at ¶ 20; *See In re Petrobras*, 862 F.3d 250, 257 (2d Cir. 2017) ("a class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries"). Further, Class Members must sign an Attestation confirming that they reasonably believe that their release from DOC custody may have been delayed for three or more hours after their bail was paid, thereby fulfilling the last criteria for class membership (delayed release). As stated above, nearly every presumptive Class Member had

their release delayed for at least three hours. Greenberger Decl. ¶ 59.

### B. Rule 23(b)(3) is Satisfied

The Settlement Class also satisfies Rule 23(b)(3)'s predominance and superiority requirements. *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015).

"Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). This action focused on DOC's policies and practices regarding intake, bail processing and payment, and release of incarcerated individuals after payment of bail. Those policies and practices are applied to Class Members as a whole, and cause harm (delays in release) common to Class Members. As such, the questions of fact and law common to the class—the existence and content of DOC policies and practices, the existence of hard copy and electronic data regarding Class Members, their bail payments, and their release from DOC custody, and whether delays in release violate the law—predominate over individualized questions. *See Rosenfeld,* 2021 WL 508339, at *10.

Rule 23(b)(3)'s superiority requirement is satisfied when "the costs of bringing individual actions outweigh the expected recovery," and when consolidation "will achieve significant economies of time, effort and expense, and promote uniformity of decision." *In re U.S. FoodServ. Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013). A class action is the superior method for adjudicating this controversy because there is "no overwhelming interest by class members to proceed individually." *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 120 (S.D.N.Y. 2011). It is inefficient, costly, and burdensome, in light of the amount of likely monetary recovery, for any individual class member to engage in the level of litigation and discovery necessary to establish Defendant's *Monell* liability. *Id.*; *Rosenfeld,* 2021

WL 508339, at *10 (minimal monetary recovery made individual litigation unlikely given the effort and expense of litigation, and separate actions would be burdensome and inefficient for municipal defendants and the court). Further, by resolving their claims as a class, individuals can increase their bargaining power, and thus potential recovery. *In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *5.

No other Class Members have initiated class-wide litigation challenging Defendant's bail and release practices, and Class Counsel is not aware of individual claims brought by Class Members against Defendant arising out of the same allegations as in the Complaint. Therefore, there are no other lawsuits on these issues that might weigh against preliminary approval of a settlement. *Id.*

Finally, a district court "[c]onfronted with a request for settlement-only class certification . . . need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012) ("A key question in a litigation class action is manageability—how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof. But the settlement class presents no management problems because the case will not be tried."). Thus, to the extent there is any concern about the common proof that would be required concerning DOC's policies and practices, such concerns fall by the wayside in certifying the Settlement Class.

Defendant does not oppose provisional certification of the class for settlement purposes. *See* Newberg § 13:3 ("If a class has not yet been certified, the parties stipulate to the conditional or temporary establishment of settlement classes for the purposes of the agreement."); *Cnty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("negotiat[ing] a

proposed settlement . . . prior to certification of the class" is appropriate), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

## V.   THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE

The proposed notices to Class Members and Claim Form, Janowicz Decl. Ex. C-G, and method and sequence of distribution set forth in the Settlement Agreement (the "Notice Plan"), as further described below, complies with due process and Federal Rule of Civil Procedure 23. The Administrator has designed the Notice Plan, in conjunction with the Parties, to provide adequate, reasonable, and the best practicable notice to Class Members.

### A.   Individualized Notice

The Notice Plan requires individualized notice to Class Members using a variety of methods. First, Rust will send a cover letter, summary notice of the Settlement Agreement, a Claim Form, and a prepaid return envelope (together, the "Claim Packet") to Class Members via first-class mail in English and Spanish. Janowicz Decl. ¶ 20; Ex. 1 at ¶ 51. These materials will information Class Members of their legal rights and how they may participate in or opt-out of the Class and will direct Class Members to the settlement website for further information and the long-form notice. Janowicz Decl. Exs. C-G. The address for initial mail notice shall be the best address match for the potential Class Member, as determined by the Administrator after carrying out address research, including through the national change of address database. Janowicz Decl. ¶ 21; Ex. 1 at ¶ 51. Where the address research does not provide a high-confidence result, Rust will conduct manual traces, including CLEAR searches as needed. Janowicz Decl. ¶ 21. The Administrator will also be supplied with potential Class Member addresses by DOCCS/ITS, pursuant to subpoena, and by specified City agencies (where available). Ex. 1 at ¶ 65.

Second, Rust will email all Class Members for whom the Administrator can locate a reliable email address to notify them of the lawsuit and the Settlement Agreement. Janowicz Decl.

¶ 23; Ex. 1 at ¶ 53. The proposed email to Class Members will provide a short overview of the Settlement Agreement and point Class Members to the Settlement website for more information. Janowicz Decl. Ex. F (proposed email to Class Members). The email address used for the initial message shall be the best email address match for the potential Class Member, as determined by the Administrator after carrying out email address research, including through commercial and governmental databases. Ex. 1 at ¶ 53. The Administrator will also be supplied with potential Class Member email information by City agencies where available. *Id.* at ¶ 65.

Third, for Class Members who have not filed a claim 45 days prior to the Bar Date, the Administrator shall send Class Members a reminder notice by way of a postcard, email, and a single text message per phone number, where possible.[5] Janowicz Decl. ¶ 52; Ex. 1 at ¶ 54. The phone number used for the reminder text message shall be the best phone number match for the potential Class Member, as determined by the Administrator after carrying out telephone number research, including through commercial and governmental databases. *Id.* The Administrator will also be supplied with potential Class Member telephone numbers by DOCCS where available. Greenberger Decl. ¶ 38.

Fourth, if any Claim Packets are returned as undeliverable up until 30 days before the Bar Date, Rust will carry out a second round of address research, including CLEAR, to identify a better address match for re-mailing the Claim Packet. If any such address is found, the Claim Packet will be re-mailed. Janowicz Decl. ¶ 22; Ex. 1 at ¶ 54.

Fifth, after the initial mail and email notices have been sent to Class Members, the

---

[5] When authorized by a court, notice to the Class Members of the Settlement Agreement via text message does not violate the Telephone Consumer Protection Act. *See Yates v. Checkers Drive-In Restaurants, Inc.*, No. 17 Civ. 9219, 2020 WL 6447196, *5-7 (N.D. Ill. Nov. 3, 2020).

Administrator shall identify which Class Members have failed to submit completed Claim Forms. Ex. 1 at ¶ 60. The Administrator shall identify the names and addresses of sureties for such Class Members, to the extent such information exists, using the data provided by Defendant, after carrying out address research, including through the national change of address database and, where the address research does not provide a high-confidence result, an address trace. *Id.* The Administrators shall mail such identified sureties a notification informing them that they may know a Class Member and encouraging them to inform Class Members of the existence of this Settlement Agreement. Janowicz Decl. ¶ 24.

Sixth, after receiving a completed Claim from a Class Member, the Administrator shall send the Class Member a confirmation letter by postcard confirming receipt of the Claim, or a confirmation by email confirming receipt of the Claim if the Class Member has provided an email address, and encouraging the Class Member to inform any friends or family who may potentially be Class Members about the Agreement. Janowicz Decl. ¶ 53; Ex. 1 at ¶ 61. Class Members who submit their claim form through the settlement website will also be provided with confirmation that their claim has been received and asked to notify friends or family that may potentially be Class Members. *Id.*

**B.      Publication Notice and Paid Media Notice**

In addition to individualized notice to Class Members, the Notice Plan requires publication notice, including notice through a robust paid and earned media plan. Rust conducted research in order to design a plan calculated to reach the greatest practicable numbers of Class Members and ensure that they will be exposed to, see, and understand the notices. Janowicz Decl. ¶ 14. The Notice Program is designed to reach approximately 70% of the target audience with a methodology

that is consistent with many nationwide court-approved class action notice programs. *Id.* at ¶ 68.[6]

Rust has conducted research on the demographic information of potential Class Members, including age, education level, languages spoken, neighborhoods with the highest number and largest concentration of state imprisonments, methods of commuting to work, and the neighborhoods with the highest shares of commuters. *Id*. at ¶¶ 6-13. Rust's subsidiary, Kinsella Media LLC ("KM"), then took methodology and measurement tools used in the media planning and advertising industry to design and measure the adequacy of a paid media program to reach a particular audience. *Id*. at ¶ 26. KM identified and selected demographics that encompass the characteristics of Class Members, analyzed and selected print, broadcast, and digital media outlets for their strength and efficiency in reaching these demographic targets, and chose media outlets for notice whose audiences are likely to include potential Class Members. *Id.* at ¶¶ 26-32.

The first wave of media notice will include television, radio, print and digital advertising, along with local outdoor advertising. Rust will purchase 30-second television advertisements in English and Spanish throughout the day on local cable networks in the New York City market, across various channels and programs to reach the largest number of viewers. *Id.* at ¶¶ 34-35. Depending on availability at the time media is purchased, the networks may include all or some of the following: ESPN Deportes, Fox Deportes, Univision, BET, and TV1. *Id.* at ¶ 35. Radio spots will run on local and Hispanic radio stations in the New York City market with a variety of broadcast programming, including music, sports, news, Spanish Contemporary, Spanish Urban, Spanish News/Talk/Sports, Spanish CHR, entertainment, talk-radio, and other topics. *Id.* at ¶ 37. Stations may include: WXNY-96.3 FM, WQBU-92.7 FM, WSKQ-FM, WADO-1280AM,

---

[6] "Reach" is the estimated percentage of a target audience reached through a specific media vehicle or combination of media vehicles. Janowicz Decl. at ¶ 68.

WKTU-103.5FM, WWPR-105.1FM, WFAN-101.9FM, WBLS-FM, WCBS-FM, and WEPN-98.7FM. *Id.* The notice will be published in print publications in English and Spanish as relevant, including *Prison Legal News*, *Harlem Community Newspapers*, *Rolling Out*, *El Especilito*. *Id.* at ¶¶ 38-41. Digital advertising will be comprised of banner ads on websites; targeted digital and social media advertising in English and Spanish on Facebook and Google; and sponsored keywords and phrases that will bring up links to the settlement website when a user searches for one of the search terms or phrases. *Id.*at ¶¶ 42-44. Outdoor advertising in the form of bus and subway shelter poster ads will appear (in English and Spanish) in subway stations and at bus stops in areas corresponding to significant levels of incarceration. *Id.* at ¶ 45.

Rust will also seek to obtain earned media coverage of the Settlement Agreement by distributing a press release on PR Newswire's New York state wire to media outlets (newspapers, websites, and television and radio stations) that will highlight the toll-free telephone number and settlement website address, so Class Members can obtain complete information about the proceeding. *Id.* at ¶¶ 46-47.

In addition to the paid and earned media notice, Defendant will post Summary Notices in areas where Class Members might view them at the NYC Department of Correction, NYC Human Resources Administration locations, NYC Administration for Children's Services locations, and New York City Department of Probation offices. Ex. 1 at ¶ 56. Class Counsel will also ask the Office of Court Administration and DOCCS to post Summary Notices in areas of court facilities and DOCCS facilities, respectively, where Class Members may see them. *Id.* at ¶¶ 57-58. Class Counsel will send copies of the Summary Notice to non-profit organizations and public defender organizations and will also reach out to such organizations to describe the settlement. *Id.*at ¶ 59.

Rust will track responses to the initial wave of media through a survey on the case website.

Janowicz Decl. ¶ 54. Additionally, the number of clicks to the website from the digital components in the program will also be tracked. *Id.* Based on the top performing tactics used in the first media wave, Rust will suggest media to be used in a second wave of media. *Id.*

     **C.**    **Form and Content of Notices, Settlement Website, Claim Submission, and Class Member Questions**

The proposed notices and Claim Form attached to the Janowicz Declaration effectively communicate the required information about the Settlement Agreement in plain, easily understood language. *Id*. at ¶¶ 61, 63. The summary notice (Exhibit C), cover letter in the Claim Packet (Exhibit E), and the email notice (Exhibit F), provides all the information that Class Members need to understand their rights in clear, concise, and plain language: the subject of the litigation, the Class definition, and the legal rights and options available to Class Members (including their right to exclude themselves from the Settlement Agreement or to file objections to the Settlement Agreement). Janowicz Decl. Ex. C, E, F.  No important or required information is missing or omitted. The summary notice, cover letter, and email notice refer readers to the settlement website for more information and or to file a claim. Janowicz Decl. ¶ 64.

The long-form notice (Exhibit G) plainly and accurately informs Class Members of information about: (1) the nature of this litigation, the Settlement Class at issue, the identity of Class Counsel, and the essential terms of the Settlement Agreement and settlement; (2) how to participate in the settlement, including whether an individual can still sign the Claim Form even if they do know how long they were detained after their bail was paid; (3) the procedure for legal representatives of deceased Class Members to file claims; (5) when settlement payments will be distributed; (6) (7) Class Counsel's forthcoming application for attorneys' fees and service awards to the Named Plaintiffs; (8) whether a settlement award will be reduced by liens or judgments; (9) providing contact information for the benefits consultant who can provide information on how a

settlement award might affect government benefits; (10) this Court's procedures for final approval of the settlement agreement and settlement, including the date, time, and place of the final approval hearing; (11) how to challenge or opt-out of the settlement, if they wish to do so; (12) how to contact the Administrator; and (13) providing the settlement website address for more information regarding the Settlement Agreement. Janowicz Decl. Ex. G; Janowicz Dec. at ¶ 65. The long-form notice provides enough information about the settlement generally so that class members understand the entire settlement and have the opportunity to lodge any objection they may have. Janowicz Decl. Ex. G. All print advertising will carry the toll-free phone number and the settlement website address for potential Class Members to request or access the long-form notice. *Id.* at ¶ 62.

While courts have approved class notices even when they provided only general information about a settlement, the information in the proposed notices far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2). *See George v. Shamrock Saloon II, LLC*, No. 17 Civ. 6663, 2021 WL 3188314, at *7 (S.D.N.Y. July 28, 2021) (class notice plainly and accurately informed class about nature of litigation, settlement class, class counsel and fees, procedures for exclusions and objections, and other key issues); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").

Next, the Claim Form (Exhibit D) has been designed to maximize participation by Class Members, including by minimizing the required information to that necessary to verify that the person completing the claim form is a person listed in the Class List prepared by Defendant. Janowicz Decl. Ex. D.

Rust will also take numerous additional steps to ensure that class members receive notice, have few difficulties filing claims, and have their questions answered. Rust will establish a

settlement website at www.NYCBailSettlement.com for Class Members to obtain information on the Settlement Agreement, including the long-form notice and a copy of the Settlement Agreement, and to file claims online. Janowicz Decl. ¶ 55. The website will be available in English and Spanish, and the summary and long-form notices will be available in English, Spanish, Russian, and Chinese. *Id.* at ¶¶ 56, 66. Class Members will be able to download a Claim Form and mail it to the Administrator if they prefer instead of filing a claim through the website. *Id.* at ¶ 55.

Rust will also establish a toll-free phone number for Class Members to request a long-form notice be mailed to them or to listen to answers to frequently asked questions. *Id.* at ¶ 58. During set hours, live operators will staff the call center and respond to calls from Class Members in English and Spanish.  After hours, a toll-free interactive voice response system (IVR) will be available in English and Spanish.  Callers will also be able to speak with a government benefits consultant to discuss the effect of any settlement payment on their benefits. *Id.*

Rust will also establish a post office box and a dedicated e-mail inbox to allow Class Members to communicate any specific requests or questions. *Id.* at ¶ 59.

Plaintiffs respectfully submit that this process is fair and amply protects the due process rights of absent class members to know about and participate in the settlement.

## CONCLUSION

Plaintiffs respectfully request the Court grant Plaintiffs' motion for preliminary approval of the settlement agreement and enter the proposed preliminary approval order attached to the Greenberger Declaration as Exhibit 2. Plaintiffs request that the Court enter the following dates in the Preliminary Approval Order:

(1)   Date by which Claim Packet shall be mailed: at least 55 days after the date of the Preliminary Approval Order;

(2)   Date of Fairness Hearing: at least 210 days after the date of the Preliminary

Approval Order;

(3)   <u>Date by which Requests for Exclusion, Objections, and Letters of Intention</u>

<u>to Appear at the Fairness Hearing, and Notices of Appearance shall be filed</u>:

35 days prior to the Fairness Hearing;

(4)   <u>Date by which Motion Seeking Final Approval of the Settlement Agreement</u>

<u>and Motion for Attorneys' Fees and Costs shall be filed</u>: 15 days prior to

the Fairness Hearing.

Dated:  November 22, 2022
        New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By: _____ /s/ _____
Matthew D. Brinckerhoff
Debra L. Greenberger
Vasudha Talla
600 Fifth Avenue, 10th Floor
New York, New York 10020
212-763-5000

ROMANO & KUAN, PLLC
Julia P. Kuan
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5075

KAUFMAN LIEB LEBOWITZ & FRICK
David Lebowitz
10 E. 40th Street, Suite 3307
New York, NY 10016
(212) 660-2332

44

**CERTIFICATION OF COMPLIANCE**

Pursuant to Section III.D. of the Individual Practices of Judge John G. Koeltl, undersigned counsel hereby certifies that the above Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Settlement has 13,996 words, exclusive of the cover page, certification of compliance, table of contents, and table of authorities. The Court granted Plaintiffs' letter motion to file a memorandum of law not exceeding 14,000 words. ECF No. 172. This brief complies with the formatting rules of Section III.D of Judge Koeltl's Individual Practices.

Dated: November 22, 2022
       New York, New York

                              By: _____/s/_____
                                  Debra L. Greenberger