# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LLOYD JONES and BARON SPENCER, on Behalf of Themselves and Others Similarly Situated,<br><br>                               Plaintiffs,<br><br>- against -<br><br>CITY OF NEW YORK,<br><br>                               Defendant. | No. 17 Civ. 7577 |

<u>**SETTLEMENT AGREEMENT**</u>

**THIS CLASS ACTION LAWSUIT SETTLEMENT AGREEMENT** ("Agreement") is made and entered into as of the 21st day of October 2022, by and among Defendant City of New York (the "City" or "Defendant") and Named Plaintiffs Lloyd Jones and Baron Spencer ("Class Representatives" or "Named Plaintiffs"), individually and on behalf of the class of individuals they seek to represent (collectively, the "Plaintiffs") (altogether, the "Parties").

**WHEREAS,** on October 4, 2017, the Named Plaintiffs and James Lynch filed a Complaint alleging, *inter alia*, that the New York City Department of Correction ("DOC" or the "Department") is liable under 42 U.S.C. § 1983 for unconstitutionally restraining the liberty of pre-trial detainees entitled to release on bail; and

**WHEREAS,** the City denied any and all liability arising out of Plaintiffs' allegations; and

**WHEREAS,** by Opinion and Order dated September 28, 2018, the Court by the Hon. William H. Pauley III denied a motion to dismiss this Civil Action by the City of New York, ECF No. 32; and

**WHEREAS,** on information and belief, Plaintiff James Lynch died on August 11, 2021; and

**WHEREAS,** counsel for Plaintiffs Lloyd Jones and Baron Spencer filed a Suggestion of Death pursuant to Federal Rule of Civil Procedure 25 on November 16, 2021, ECF No. 128; and

**WHEREAS,** the City recognizes that, upon Mr. James Lynch's death, he is no longer able to serve as a class representative in this matter; and

**WHEREAS,** the City will not oppose any claim by Mr. Lynch's appointed estate administrators to collect the settlement payments Mr. Lynch would have been entitled to as a class member, if the appointed estate administrators (standing in Mr. Lynch's shoes) timely, completely, and accurately provide the executed attestation; and

**WHEREAS,** James Lynch was dismissed from this Civil Action on June 17, 2022, without waiving the right of his heirs to claim compensation due to him as a Class Member under this Agreement; and

**WHEREAS,** Plaintiffs' Counsel thoroughly analyzed and evaluated the merits of the claims made against Defendant in the Complaint, and based on their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, and in light of the delay attendant to litigation, Class Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Agreement is in the best interests of the Named Plaintiffs and the Class Members; and

**WHEREAS**, Defendant denies all the allegations made in the Complaint but nonetheless, without admitting or conceding any liability or damages whatsoever, has agreed to

2

settle the action on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing litigation; and

**WHEREAS,** the Parties desire to enter into an agreement to resolve the issues raised in this litigation, without further proceedings and without admitting any fault or liability; and

**WHEREAS,** the terms of this Settlement Agreement ("Agreement") were extensively and vigorously negotiated in good faith over the course of approximately eighteen months; and

**WHEREAS,** the negotiations have resulted in this Agreement, which, subject to the approval of the Court, settles this Civil Action in the manner and upon the terms set forth below; and

**WHEREAS**, the signatories hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties and the Class Members to the terms and conditions hereof, subject to Court approval.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,** by and between the undersigned, as follows:

### INTRODUCTION

1.     The Parties consider this Agreement to be fair, reasonable, and adequate.

2.     Defendant denies any and all liability and denies that it or its agencies had or have a policy, or engaged in or currently engage in, a pattern or practice that deprived persons of rights, privileges, or immunities secured or protected by the Constitution and laws of the United States and the State of New York or by statute.

3

3.     This Agreement does not, and shall not be deemed to, constitute an admission by Defendant as to the validity or accuracy of any of the allegations, assertions, or claims made by Plaintiffs.  This Agreement does not constitute an admission, adjudication, or finding on the merits of this Civil Action.

4.     This Agreement shall not be admissible in, nor is it related to, any other litigation or settlement negotiations, except to enforce the terms of this Agreement.

5.     Class Counsel has extensively investigated and litigated the claims asserted in this Civil Action and—taking account of the contested issues involved, the expense and time necessary to prosecute the Civil Action through trial, the risks and costs associated with further prosecution of the Civil Action, the uncertainties of complex litigation, and the substantial benefits to be received pursuant to this Agreement—Plaintiffs are sufficiently informed and satisfied that the terms of this Agreement are an appropriate and fair resolution of the Class Members' claims.

## DEFINITIONS

6.     The capitalized terms below shall have the meanings defined in this Section wherever used in this Agreement, and for the purposes of this Agreement only.  Capitalized terms defined in other Sections of this Agreement shall have the meanings whenever used in this Agreement, and for the purposes of this Agreement only.

7.     "Actual Benefit to the Class" means the total of attorneys' fees and expenses, Administrative Costs, class representative service awards, and $3,500 times the number of claimed instances of release actually received by the Administrator.

8.     "Administrative Costs" are the fees, charges, and expenses incurred by the Administrator in connection with or related to the implementation, administration, or performance

4

of any of the duties of the Administrator set forth in this Agreement, including any expenses or costs the Administrator incurs for notice to Class Members, as described in Paragraphs 51-78.

9.      "Administrator" means the Claims Administrator appointed by the Court to administer the QSF, disseminate the Claim Packets and provide notice, and review and determine the validity and amount of claims submitted by Class Members, according to the procedures set forth herein, with its further duties defined in paragraphs 51-78, and described in further detail in the Administrative Proposal of Rust Consulting attached as Appendix A. In the event of any contradiction between the terms of this Agreement and the terms of the Administrative Proposal, the terms of this Agreement control. The Parties agree that Rust Consulting will serve as the Administrator, and will act pursuant to terms of this Agreement, the terms of the Preliminary Approval Order, and the terms of the Final Approval Order.

10.      "Attestation" refers to the following statement in the Claim Form that Class Members will be required to sign in order to be eligible for payment pursuant to paragraphs 91-103: "I declare that I was released on bail from a jail run by the New York City Department of Correction on at least one occasion between October 4, 2014 and October 21, 2022. I reasonably believe that it may have taken at least three (3) hours after my bail was paid before I was released from custody."

11.      "Award Amount" means the total to be paid to a Class Member who makes a Valid Claim, which will be calculated by multiplying $3,500 by the total number of Instances of Release of the Class Member.

12.      "Bail" refers without limitation to cash bail or bail bonds. This definition includes credit card bail; an insurance company bail bond; a secured surety bond; a secured appearance bond; a partially secured surety bond; a partially secured appearance bond; an

5

unsecured appearance bond; an unsecured surety bond; "dollar" bail; "self" bail; online bail; kiosk bail; and any other form of payment DOC accepts for payment of the amounts set under N.Y. Crim. Proc. Law §§ 530.10–530.80.  For the purposes of this definition, bail can be paid or posted by the individual in DOC Custody, by a Surety, or by any commercial or non-commercial entity, including employees of DOC and contractors paid by DOC.  Bail can be paid at DOC Facilities, at kiosks installed by DOC, online on websites created at the direction of DOC, on the phone, or at courthouses and other facilities managed by the New York State Unified Court System.

13.     "Bar Date" is the date established by the Court by which any presumptive Class Member who wishes to receive payment pursuant to this Agreement must submit a Claim Form online or mail and postmark the Claim Form, subject to the exceptions set forth in paragraphs 96-97 below.  The Parties agree that this date should be at least 35 days before the Final Approval Hearing.

14.     "City" means the City of New York.

15.     "Civil Action" means *Jones et al. v. City of New York*, No. 17 Civ. 7577 (S.D.N.Y.).

16.     "Claim Form" means the form agreed to by the Parties that Class Members must complete and submit in order to receive payment from this Settlement, to be submitted to the Court with the motion for Preliminary Approval.

17.     A "Claim Packet" means a Claim Form, together with the notice to be mailed to Class Members in a form approved by the Court.  The Claim Packet will be mailed by the Administrator to all persons on the Class List for whom an address is identified.

6

18.     "Claimant Total" means the total amount of funds to be paid to Class Members, which will be calculated by multiplying $3,500 by the total number of Instances of Release of Class Members who make Valid Claims.

19.     "Class Counsel" means Emery, Celli, Brinckerhoff, Abady Ward & Maazel LLP, Romano & Kuan PLLC, and Kaufman Lieb Lebowitz & Frick LLP.

20.     "Class List" is the list of all individuals released by DOC during the Class Period under the "Bail Paid" or "BP" release code on the Transfer/Discharge screen on IIS (Inmate Information System). The Class List shall be provided by Defendant to the Administrator within two weeks of the Preliminary Approval Date. If an individual appears on the Class List, they will be presumptively considered to have been released from DOC Custody upon payment of Bail during the Class Period.

21.     "Class Member" means any member of the Settlement Class who does not file a valid and timely Opt-Out as provided in paragraph 104 of this Agreement.

22.     "Class Period" means the period commencing on October 4, 2014 and ending on the Execution Date.

23.     "Class Representatives" or "Plaintiffs" or "Named Plaintiffs" mean Lloyd Jones and Baron Spencer.

24.     "CLEAR" is an electronic identification and address search database owned by Thomson Reuters.

25.     "Counsel for Defendant" or "Defendant's Counsel" means the New York City Law Department, Office of the Corporation Counsel.

26.     "Court" means the United States District Court for the Southern District of New York.

27. "Custody" means that an individual is under the control of or subject to the direction of DOC. An individual is in Custody until such time as they completely leave all secured areas of DOC facilities, including all DOC-staffed offices in New York State Unified Court System buildings, all holding areas at such court facilities, and all vehicles and other conveyances used to transport or hold individuals in DOC Custody, and including without limitations leaving Rikers Island or leaving the Vernon C. Bain Center by passing the intersection of Halleck Street and Ryawa Avenue in Bronx, NY.

28. "DOC" or the "Department" means the New York City Department of Correction.

29. "DOF" means the New York City Department of Finance.

30. "Effective Date for Payment" or "Effective Date" is the date on which the City must deposit the Claimant Total with the Administrator. The Effective Date for payment is the date no later than 21 business days after the Final Approval Order is final. The Final Approval Order will become final (a) if no objector has lodged a timely objection, on the date of entry of the Final Approval Order, or (b) if an objector has lodged a timely objection, when the time for that objector to appeal has expired or, if the objector has appealed from the Final Approval Order or any portion thereof, on the date when the appeal results in the affirmance of the Court's Final Approval Order of this Agreement. If there is an appeal of the Court's order regarding attorneys' fees and expenses, such an appeal shall not delay Final Approval of this Agreement and shall not delay payments to eligible Class Members, Administrative Costs, and class representative service awards.

31. "Execution Date" shall mean the date this Agreement is executed by Class Counsel and Counsel for Defendant.

8

32.     "Final Approval Order" means an Order by the Court, after a fairness hearing, granting Final Approval to this Agreement (which means the Court has found the settlement to be fair, reasonable and adequate and approving this Agreement), approving Class Counsel's fees and costs, approving the Administrative costs, approving Service Award Payments, and dismissing the Civil Action with prejudice.   If the Court has not finally resolved Class Counsel's fees and costs, that should not delay the Court's issuance of the Final Approval Order to grant Final Approval to this Agreement.

33.     "Final Approval Hearing" or "Fairness Hearing" means the hearing to be scheduled by the Court to determine, among other things, whether the Court should approve the proposed Agreement as fair, reasonable and adequate.

34.     "IIS" is the Inmate Information System, an electronic database maintained by DOC.

35.     "Instance of Release" means every time an individual left DOC Custody upon payment of Bail.

36.     "NYS DOCCS" means the New York State Department of Corrections and Community Supervision.

37.     "Opt-Out" is any potential Class Member who files a timely written request to be excluded from the Class, in accordance with the requirements set forth in Paragraph 104.

38.     "Parties" means Plaintiffs Jones and Spencer and Defendant.

39.     "Potential Benefit to the Class" means the total of attorneys' fees and expenses, Administrative Costs, class representative service awards, and $3,500 times the number of Instances of Release in the Class Period.

9

40. "Preliminary Approval Date" means the date of entry of the Preliminary Approval Order.

41. "Preliminary Approval Order" means the Order entered by the Court preliminarily approving this Agreement, certifying the Class subject to Final Approval, scheduling a Fairness Hearing, approving a plan of notice to the Class, and appointing the Administrator.

42. "Publication Notice Plan" means the Plan for Publication Notice produced by the Administrator and included in the Administrative Proposal attached as Appendix A, subject to the terms of paragraph 81-82.

43. "Qualified Settlement Fund" ("QSF") means a bank account to be established by the Administrator for the benefit of the Settlement Class. The QSF will not be an interest-bearing account.

44. "Released Parties" means the City, its predecessors, successors and assigns, together with all past and present officials, employees, representatives, and agents of the City of New York, or any agency thereof, and any person or entity represented by the Office of the New York City Corporation Counsel, and, in the case of all such entities, their respective past and present representatives, officers, directors, attorneys, agents, employees, privities, and insurers.

45. "Summary Notice" means a one-page English and a one-page Spanish summary of this Agreement in a form approved by the Court.

46. "Surety" refers to any person posting Bail for the release of an individual in DOC Custody.

47. "Valid Claims" means claims timely, completely, and accurately executed by Class Members, including the Attestation, as well as untimely claims submitted pursuant to

10

paragraphs 96-97 that are completely and accurately executed by Class Members, including the Attestation.

## CLASS CERTIFICATION AND PRELIMINARY APPROVAL

48. The Parties agree to ask the Court to certify the Settlement Class for settlement purposes pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure at Preliminary Approval.

49. Class Counsel will move for Preliminary Approval of this Agreement and its motion will include a proposed notice, a proposed Preliminary Approval Order, and a proposed Claim Form. The proposed Preliminary Approval Order will request certification of the Settlement Class for settlement purposes and will include the findings required by Federal Rule of Civil Procedure 23(a) and 23(b)(3). The Preliminary Approval Motion will also seek the setting of a Fairness Hearing for Final Approval of the settlement. Defendants will not oppose Plaintiffs' motion so long as it conforms to the terms of this Settlement Agreement.

50. The "Settlement Class" is defined as all people who were:

a. In the Custody of DOC; and

b. Were on at least one occasion released from DOC Custody upon payment of Bail during the Class Period; and

c. Had a delay in their release from Custody after Bail had been paid.

## NOTICE PLAN

51. Direct Mailing: Notice of this Civil Action and the Claim Form shall be provided to potential Class Members via direct mailing to all individuals on the Class List in a form to be filed along with the motion for Preliminary Approval. The address used for the initial mailing shall be the best address match for the potential Class Member, as determined by the

Administrator after carrying out address research, including through the national change of address database and, where the address research does not provide a high-confidence result, CLEAR searches. The Parties agree that, if necessary, Plaintiffs may seek Court orders or subpoenas to identify current addresses for Class Members from NYS DOCCS.

52. PARAGRAPH INTENTIONALLY OMITTED.

53. Email Notice: The Administrator shall send emails to all Class Members for whom the Administrator can locate a reliable email address to notify them of the Civil Action and this Settlement using a script agreed to by the Parties, to be filed along with the motion for Preliminary Approval. The email address used for the initial message shall be the best email address match for the potential Class Member, as determined by the Administrator after carrying out email address research, including through commercial and governmental databases. The Parties agree that, if necessary, Plaintiffs may seek Court orders or subpoenas to identify current email addresses for Class Members from NYS DOCCS.

54. On or about 30 days before the Bar Date, the Administrator shall send Class Members a reminder notice by way of a postcard, email, and a single text message per phone number, where possible. Reminder notice to the class via text message shall be done only if the Court approves of sending reminder notice by text message in the Preliminary Approval Order as consistent with the requirements of Rule 23 and due process. The phone number used for the reminder text message shall be the best phone number match for the potential Class Member, as determined by the Administrator after carrying out telephone number research, including through commercial and governmental databases. The Parties agree that, if necessary, Plaintiffs may seek Court orders or subpoenas to identify current telephone numbers for Class Members from NYS DOCCS. If any Claim Packets are returned as undeliverable up to this point, the Administrator

12

will carry out a second round of address research, including CLEAR, to identify a better address match for re-mailing the Claim Packet.

55.     To augment the Administrator's efforts to ensure that as many persons as reasonably possible receive notice, the Parties will work cooperatively together to ensure that Summary Notice, to be filed along with the motion for Preliminary Approval, is posted in places where Class Members are likely to see them as set out in paragraphs 56-59 below.   The Administrator will provide the Parties with the requested number of copies of the Summary Notice and will email the Parties a PDF version of the Summary Notice after the initial mailing of the Claim Packets and approval of the Summary Notice, whichever date is later.

56.     The City agrees to make best efforts to ensure that the Summary Notices in 8.5" x 11" (or larger if an agency chooses) are posted in the following locations within two weeks of the City's receipt of the Summary Notice from the Administrator pursuant to paragraph 55:

a. NYC Department of Correction: In the intake areas and law libraries of its jail facilities and in the DOC intake areas that are under DOC control at the state court houses, where legal notices regularly appear.

b. NYC Human Resources Administration ("HRA"): Prominently in one place in each client contact location (this does not include administrative offices), for example, Benefit Access Centers, SNAP Centers, Medicaid Offices at HRA locations, Office of Child Support Services Offices, CASA Offices, and HIV/AIDS Services Administration locations.

c. NYC Administration for Children's Services: Prominently in a central public location in each field office location where clients will be able to see the notice.

13

d.  New York City Department of Probation ("DOP"): In the adult supervision office for each borough in New York City where legal notices regularly appear.

57. NYS DOCCS:  The City agrees that Plaintiffs on behalf of the Parties may make a formal written request to NYS DOCCS to post Summary Notices, which the Parties will obtain from the Administrator and shall provide NYS DOCCS, as extensively as reasonably possible, in locations where individuals incarcerated in their facilities are likely to see them.  The City agrees that Plaintiffs on behalf of the parties may also request that DOCCS ask all State parole and probation officers to inform individuals under their supervision of the existence of this Civil Action and Settlement and provide them with a copy of the Summary Notice.

58.  Within two weeks of the initial mailing of the Claim Packets and approval of the Summary Notices, whichever date is later, Class Counsel will forward copies of the Summary Notice to the New York State Office of Court Administration (including local administrative judges) and request that they post the Summary Notices as extensively as reasonably possible, throughout offices and/or locations where arrestees, detainees or individuals on probation are likely to see them.

59.  Class Counsel shall forward copies of the Summary Notice to non-profit organizations and public defender organizations in an effort to give notice to as many Class Members as is reasonably practicable.

60.  After the initial mail and email notices have been sent to Class Members, the Administrator shall identify which Class Members have failed to submit completed Claim Forms.  The Administrator shall identify the names and addresses of Sureties for such Class Members, to the extent such information exists, using the data provided by the City pursuant to paragraph 66, after carrying out address research, including through the national change of address

14

database and, where the address research does not provide a high-confidence result, an address trace. The Administrators shall mail such identified Sureties a notification informing them that they may know a Class Member and encouraging them to inform Class Members of the existence of this Settlement Agreement. Nothing in this paragraph will require the Administrator to send such Surety notifications to (a) Class Members, (b) commercial enterprises involved in posting Bail or bond, or (c) non-profit organizations created for the purpose of paying Bail.

61. Upon receiving a claim submission through the settlement administration website, the Administrator shall provide an immediate confirmation on the website, as well as a confirmation by email for those who provided email addresses, that the Administrator has received the information submitted and encouraging the notification of any friends or family who may potentially be Class Members. After receiving a completed Claim from a Class Member, the Administrator shall send the Class Member a confirmation letter by postcard confirming receipt of the Claim, or a confirmation by email confirming receipt of the Claim if the Class Member has provided an email address, and encouraging the Class Member to inform any friends or family who may potentially be Class Members about the Agreement.

62. Along with the motion for Final Approval, pursuant to a schedule to be set by the Court, Class Counsel shall file or cause to be filed with the Court a declaration from the Administrator confirming that notice was provided consistent with this Settlement Agreement and all Orders concerning Notice entered by the Court.

## ADMINISTRATOR

63. The Administrator's duties shall include administering this class action settlement, including but not limited to the following matters: (1) locating Class Members; (2) issuing notice, including information about the right to object or Opt Out of the settlement; (3)

distributing Claim Packets to and receiving executed original Claim Forms from Class Members; (4) establishing and administering the QSF and upon conclusion of the process, closing the Fund; (5) determining eligibility for awards on the basis of information provided by counsel for the Parties and the Class Members, validating the claims, and providing Class Counsel and Defendant's Counsel a list of those persons found preliminarily eligible every 30 days; (6) calculating the amounts of awards; (7) issuing and mailing payments to eligible Class Members, and issuing and filing all required tax forms and statements; (8) responding to inquiries from Class Members about this Agreement and the procedures contained herein, including by the use of a toll-free number and a website; (9) collating all objections to the Agreement for Class Counsel and Counsel for Defendant; (10) creating a database of Class Members who have filed timely and valid Claim Forms; (11) creating a database of Opt-Outs; (12) coordinating and advancing payment for publication notice per paragraph 81; (13) providing the Parties with regular bills and a final accounting; and (14) to the extent not listed here, the tasks enumerated in the Administrative Proposal attached as Appendix A.

### *Data*

64.     The City agrees to facilitate the work of the Administrator by, among other things, obtaining and providing to the Administrator information, data, documents, and records in the City's possession, which are relevant and appropriate to facilitate the administration of this Agreement.  Within two weeks of Preliminary Court Approval of the Agreement, the City will provide the Administrator with an Excel spreadsheet, generated by IIS, containing a list of all individuals released from the Custody of the Department of Corrections during the Class Period on a "bail paid" or "BP" discharge code.  This data shall include, where available, the full names of all such individuals, the individual's Social Security Number, date of birth, NYSID number,

16

Book & Case number, admission dates, release dates on bail paid, last known address, name of closest contact, and address of closest contact. The Excel spreadsheet will include the last address recorded in IIS for each individual based on their most recent release from DOC Custody, regardless of whether that release was on bail payment.

65.     The City shall provide the Administrator with, where available, any additional mailing address and email address data for Class Members it possesses, from databases maintained by the New York City Department of Probation, the New York City Department of Social Services, and DOF. The City shall provide these additional datasets to the Administrator no later than two weeks after Preliminary Court Approval.

66.     No later than two weeks after Preliminary Court Approval of the Agreement, the City will provide the Administrator with an Excel spreadsheet listing, where available, the name and mailing address, for Sureties, including the names and docket numbers for the Class Members for whom these Sureties paid Bail.

67.     The City will not object to Plaintiffs' efforts to receive data from third parties to effectuate notice to the Class, including from NYS DOCCS, to the extent such data exists and may be obtained.

### Confidentiality

68.     Class member identifying information and contact information, including any aggregated data collected by the Administrator for the purposes of providing notice, and any updates to such data through aggregation or address research shall be treated as confidential ("Confidential Information"), and shall not be disclosed to anyone except Class Counsel (including outside consultants and contractors), Defendant's Counsel, the Administrator, or the Court under seal, with the limited exception of sharing with such City personnel as necessary for the purposes

17

of identifying individuals with open child support liens pursuant to (and limited to the data listed in) paragraph 75 and for the purposes of identifying individuals with DOF docketed parking judgments pursuant to (and limited to the data listed in) paragraph 76, subject to the data destruction provisions in paragraph 77. To the extent Class Counsel or Defendant's Counsel or the Administrator seek to disclose Confidential Information received from the Administrator or any Party (or agency thereof) to any other person or entity, they must first seek the Parties' consent in writing (which shall not be unreasonably withheld), have the recipient sign the confidentiality agreement, and the disclosure sought shall be for the purposes of providing more effective notice to Class Members. No Party or the Administrator shall use Confidential Information for any other purpose other than in this litigation and for the administration of this Agreement. All Parties and the Administrator shall take all reasonable steps to ensure that the Confidential Information concerning all proposed Class Members remains private and confidential.

69. Nothing herein shall limit Class Counsel or the Administrator's ability to disclose data about a Class Member to that Class Member or their counsel. Nothing herein shall limit the City's ability to retain or use data and information about Class Members it possesses separate from the administration of this settlement and nothing herein shall require the City to destroy such data/information.

70. In the event that any of the Parties or the Administrator is served with a court order or grand-jury subpoena providing for or requiring disclosure of Confidential Information, they shall inform all other Parties no later than 2 business day days after receiving such service, and in any event before disclosing any such information. Before any such information is disclosed, any Party shall have standing to challenge the disclosure of such information before a court of competent jurisdiction.

18

*QSF*

71.     The Administrator will apply for a tax ID number, if necessary, and take all necessary steps for the timely creation of the QSF.

72.     The Administrator shall provide the City the Employer Identification Number for the QSF, and a completed W-9 Form and bank routing information for the QSF.

73.     The Administrator will provide to Class Counsel, Defendant's Counsel, and the City Comptroller a monthly statement of expenses paid.  The City Comptroller's Office shall have the right to inspect and copy all tax forms (and worksheets), and monthly bank statements of the QSF.  Neither the City nor Class Counsel nor the Class Representatives will be responsible for taxes, penalties, or interest incurred on the QSF.  The Administrator shall issue all required IRS forms.

*Liens and Government Benefits*

74.     The City shall not assert any liens against the payment to Class Members except, where relevant, child support liens and docketed parking judgments owed to DOF pursuant to paragraphs 75 and 76.  The City will not otherwise seek to reduce the payments by exercising its right to recover any other amounts.  These provisions apply only to the proceeds received by Class Members under this Settlement Agreement and nothing herein shall be construed as a waiver to seek or collect all remaining balances due and owing from any source other than the proceeds paid pursuant to the Settlement Agreement.

75.     Every thirty (30) days after Preliminary Approval, the Administrator shall provide the Parties a list of those Class Members who submit Valid Claims so that the City may on a rolling basis determine whether that person's Award Amount will need to be reduced due to New York child support liens.  No later than thirty (30) days after receiving the final list of Class

Members who have submitted Valid Claims by the Bar Date, the City shall provide the Administrator and Class Counsel with a list of those persons who have New York child support liens and the amount that shall be deducted from each such persons' Award Amount to be forwarded to the beneficiary of the child support lien. Prior to providing this list, the City shall send each person owing child support liens a notice describing that they owe these liens and information on how to file a challenge regarding the deduction of the child support liens from the Award Amount. If the City later determines that the amount of the liens was incorrect, the City shall directly pay that person the over-deduction of the amount that was withheld from that person's Award Amount. The City will in no instance maintain or use the data collected by or processed under this Agreement to collect child support or any other liens from Class Members, beyond such amounts as are deducted from amounts owed to Class Members under this Agreement.

76.    The Parties agree to work in good faith to not have the DOF assert any liens or judgments against any claim payment. In no event shall DOF seek to reduce a Class Members' settlement payments based on any lien other than docketed parking judgments and, in that situation, DOF will not seek to reduce the Class Members' settlement payments by more than $500 in docketed parking judgment debt. If DOF asserts such docketed parking judgment debt, every thirty (30) days after Preliminary Approval, the Administrator shall provide the Parties a list of those Class Members who submit Valid Claims so that the City may on a rolling basis determine whether that person's Award Amount will need to be reduced due to docketed parking judgment debt. No later than thirty (30) days after receiving the final list of Class members who have submitted Valid Claims by the Bar Date, the City shall provide the Administrator and Class Counsel with a list of those persons against whom it is asserting a docketed parking judgment debt

20

and the amount (of no more than $500) that shall be deducted from each such person's Award Amount and credited against the Claimant's DOF debt. If the City later determines that the amount of the docketed parking judgment debt was incorrect, the City shall directly pay that person the over-deduction of the amount that was withheld from that person's Award Amount. The City will in no instance maintain or use the data collected by or processed under this Agreement to collect any debt from Class Members, beyond such amounts as are deducted from amounts owed to Class Members under this Agreement.

77.     With respect to Confidential Information provided to HRA, DOF, and/or Defendant's Counsel, the City will in no instance maintain or use that Confidential Information to collect DOF or any other liens from Class Members, beyond such amounts as are deducted from amounts owed to Class Members under this Agreement. HRA and DOF shall make reasonable efforts to delete all Confidential Information they receive from the Administrator no later than sixty (60) days after the deadline for submission of Untimely Claims, set forth in paragraph 97 below, and provide written confirmation of data destruction to Class Counsel within ten (10) days of such destruction. Nothing in this Agreement will require the City to delete data it already possesses independently of the settlement of this action.

78.     The Administrator will offer Class Members the option of speaking with a government benefits consultant to discuss the effect of any award under this Agreement on their benefits. The cost of any such consultation shall be paid as part of the Administrative Costs. No benefits currently received by Class Members may be terminated or reduced as a result of award amounts unless required by federal, state, or City law or regulation, or as set forth in Paragraphs 74-76.

## ATTORNEYS' FEES AND COSTS

79.     At or about the time of the motion for Final Approval, Class Counsel will make an application seeking Court approval for attorneys' fees and expenses of up to a cap of the lower of (a) 10% of the Potential Benefit to the Class, or (b) 25% of the Actual Benefit to the Class.  Class Counsel may seek fees that are lower than this cap.  Defendant reserves the right to respond to Class Counsel's application, including that Class Counsel's fees should not be awarded based on a percentage of the Actual/Potential Benefit and should instead be assessed and awarded based on a lodestar calculation, with the possibility of an additional multiplier, given the nature of this Settlement.  Any Court resolution of Class Counsel's application for attorneys' fees and expenses shall not delay Final Approval of the settlement and shall not delay payments to eligible Class Members, Administrative Costs, and class representative service awards, as detailed in paragraph 80-102.

## FUNDING OF THE SETTLEMENT

80.     The City shall pay the Administrator's costs and fees to administer the Settlement and provide notice to Class Members.  The Administrator will carry out the tasks listed in the Administrative Proposal, attached as Appendix A.  The Administrator has agreed to cap direct notice and administrative costs at $1,091,388, per the attached Proposal (Appendix A).

81.     The Administrator will undertake the tasks and costs for publication notice as follows, per the attached Proposal (Appendix A): pay $700,000 in an initial media outreach "wave"; and an amount to be agreed upon by the parties in consultation with the Administrator for subsequent media "wave(s)" that shall not exceed $350,000.  If the direct notice and administrative costs are less than $1,091,388, any remaining funds may be used in subsequent media "wave(s)"

22

where the Administrator recommends that additional media outreach would assist in reaching class members in subsequent media "wave(s)."

82.     If the Administrator recommends that additional media outreach beyond this would assist in reaching class members, the parties shall meet and confer in good faith to potentially increase the media notice budget.  If the parties are unable to agree, the Court shall resolve the amount of subsequent media "wave(s)."  Similarly, if the Administrator recommends that additional funds are required to effectively provide direct notice and administer the settlement, despite its best efforts to remain within the cap, the parties shall meet and confer in good faith to possibly increase the direct notice and administrative costs budget.  If the parties are unable to agree, the Court shall resolve the amount of direct notice and administrative costs that the City shall pay.  With the Court's permission, the parties may include the Administrator in any necessary appearances and/or filings with the Court related to possible increases to the Administrator's agreed-upon cap, as set forth in this paragraph.

83.     Within 20 days after Preliminary Court Approval, the Administrator shall provide the Parties with an initial invoice for costs associated with individualized notice to Class Members and Publication Notice.  Within 10 business days of receiving this invoice, the City shall deposit or cause to be deposited into a bank account designated by the Administrator by wire transfer an amount of same-day-available funds equal to the amount listed in the initial invoice, and will provide additional funds to the Administrator if required by the Court pursuant to the terms of the previous paragraph.

84.     If the Agreement is not ultimately approved by the Court, the City will be responsible for all Administrative Costs incurred prior to such point, though to the extent the Administrator possesses any unspent Administrative Costs, they shall be returned to the City.

85.     Thereafter, the Administrator will submit monthly bills for Administrative Costs to the Parties.  The City shall pay such bills within 30 business days unless the Parties object to the bill.

86.     A copy of the Administrator's final accounting shall also be provided to the City and Class Counsel.

87.     Subject to the terms and conditions of this Agreement and the approval of the Court, on or by the Effective Date for Payment, the City shall deposit or cause to be deposited into a bank account designated by the Administrator by wire transfer an amount of same-day-available funds equal to the Claimant Total.

88.     All Court-approved attorneys' fees and costs shall be payable to Class Counsel by the City once (a) the Court has ordered or approved such payment, and (b) Class Counsel has sent Counsel for Defendant all documents necessary to effect such payments to them, including W-9 forms.  The effective date of payment of attorneys' fees and costs shall be no later than 21 business days from the date the Court orders or approves payment of attorneys' fees and costs and such order becomes final (i.e., after the time for appeal of such order on attorneys' fees and costs has expired, or if an appeal from such order or any portion thereof is taken, after the appeal is resolved).

89.     All payments to the Class Representatives shall be payable once (a) the Court has issued its Final Approval Order, (b) the Class Representatives have delivered to Counsel for Defendant Class Representatives' W-9s, and (c) the Class Representative signs a release consistent with the release in this Agreement, that also releases any further claims for a service award arising from the Class Representative's service to the Class.  Payment to the Class Representatives shall be made on or by the Effective Date of Payment.

24

**CLASS REPRESENTATIVE SERVICE AWARD PAYMENTS**

90.     Subject to the Court's approval, the City agrees to pay awards for the services provided to the Class by the Class Representatives and for any inconvenience, pain, suffering, and other non-pecuniary loss experienced as a result of having been a named plaintiff in this action as follows: $20,000 to Plaintiff Lloyd Jones and $20,000 to Plaintiff Baron Spencer. These service award payments are in addition to any amounts otherwise due to the Class Representatives with respect to their individual claim as Class Members.  The Service Award Payments shall be paid directly by the City to Class Counsel for payment to the Named Plaintiffs.

**CLAIMS AWARDS TO CLASS MEMBERS AND CLAIMS PROCESS**

91.     Subject to the terms and conditions of this Agreement, the City agrees to pay the Claimant Total, Administrative Costs, Class Representative Service Awards, and Attorneys' Fees and Costs as determined by the Court.

92.     Class Members who timely submit a Valid Claim will be entitled to receive the Award Amount, to be calculated according to paragraph 11.  If the Class Member does not know when Bail was paid, or if they do not know when the Class Member was released, they may still sign the Attestation.  The City will not require individuals on the Class List to provide any additional proof of their incarceration in DOC Custody or the length of such incarceration or over-detention.

93.     No payment shall be made to eligible Class Members before the Effective Date for Payment.  Claims will be processed between the date of Preliminarily Court Approval and the Effective Date for Payment.  Upon the Effective Date for Payment, processed claims may be paid.  Untimely claims may be processed after the Effective Date for Payment according to paragraph 96-97.

25

94. Upon receiving a Claim Form, the Administrator shall determine the Award Amount, based on the number of Instances of Release, as identified in the Class List. Each Instance of Release shall be worth $3,500 (three thousand five hundred dollars).

95. Where a Class Member was released on Bail twice or more during the Class Period and is thereby entitled to multiple payments, and where that Class Member has submitted a Valid Claim, the Class Member shall receive one check containing payment for each of the Instances of Release multiplied by $3,500.

96. Class Members must submit a completed Claim Form to the Administrator, which must be received by the Bar Date. If a Class Member is identified or located forty-five (45) days or less prior to the Bar Date, the Class Member shall have forty-five (45) days from the date the Claim Packet is mailed to them to submit a Claim Form.

97. The Administrator shall accept untimely claims that are received by the Administrator within three (3) months of the Effective Date of Payment if a Class Member can establish good cause for submitting an untimely Claim Form. Good cause for submitting an untimely Claim Form shall include, without limitation, the illness or death of a Class Member or member of Class Member's family, the incarceration or detention of a Class Member, or the failure to receive a notice packet, mailing or technical issues generally, including without limitation undelivered claim forms, technical difficulties or problems with uploading the claim, problems with tickler or reminder systems, translation issues, or any other barriers to submitting a timely claim form. The Administrator shall determine whether a Class Member has established good cause, including asking a claimant for the basis for the untimely claim. The Administrator shall apply a permissive standard for that determination and shall not demand a written explanation, or proof or evidentiary support to establish good cause. The Administrator's determination that a

26

Class Member has established good cause is final and non-reviewable.  If the Administrator makes an initial determination that a Class Member has not established good cause, the Administrator shall consult with the Parties before reaching a final determination; the affected Class Member shall have the right to ask the Court to review *de novo* the Administrator's denial of an untimely claim.  The Administrator shall invoice the City for amounts to be paid in satisfaction of untimely claims with good cause monthly, and the City shall transfer funds sufficient to pay such untimely claims within 21 business days of receiving this invoice.  On a monthly basis, the Administrator shall provide the Parties a list of those Class Members whose untimely claims are accepted so that the City may determine (within no more than thirty (30) days) whether that person's Award Amount will need to be reduced due to New York child support liens (under the terms of paragraph 75) or DOF docketed parking judgment debt if such judgments are asserted (under the terms of paragraph 76).  The Administrator shall pay valid untimely claims on a monthly basis, but the Administrator shall not issue payment to an untimely Claimant before the expiration of the 30 days from Rust providing notice to the City of such accepted untimely claim in order to allow the City to assert, if appropriate, its rights under paragraphs 75 or 76.

98.     The Administrator shall contact Class Members who submit deficient Claim Forms to provide them the opportunity to correct their Claim Forms.  The absence of a social security number or other identifying information shall not be a basis for not issuing an award to a Class Member if the Administrator can otherwise confirm the identity of the Class Member.

99.     The Administrator is permitted for good cause shown (including proper documentation and proof of authority) to issue a Class Member's check in the name of a person other than the Class Member.

Final Execution Copy

100.     Rights and claims under this Agreement shall survive the death of Class Members.  If a Class Member who is eligible to receive monetary relief under this Agreement is deceased, the amount payable to such deceased Class Member shall be paid to the legally and duly appointed representative, administrator, or similar legal successor of their estate ("representative"). A voluntary administrator appointed through the New York State Surrogate's Court's Small Estate program will be considered a representative.  The representative shall provide proof of death and appropriate documentation to show that they are properly a representative of the estate.  A representative as defined in this paragraph shall be permitted to sign the Attestation in the name of the Class Member, based on the information known by the representative.  If the Administrator determines, after reasonable opportunity has been given, that there is insufficient information or proof regarding the deceased person's estate to permit such payment, the Administrator will consult with the Parties.  Any disputes between the Parties regarding whether sufficient proof has been provided regarding the deceased person's estate to permit payment shall be resolved by the Court.

101.     The City will not oppose any claim by James Lynch's appointed estate administrator(s) to collect the settlement payments Mr. Lynch would have been entitled to as a Class Member, if the appointed estate administrator(s) (standing in Mr. Lynch's shoes) timely, completely, and accurately file a Claim Form.

102.     Award checks for Class Members who submit timely claims shall be valid for six (6) months after initial issuance; the Administrator may provide a reasonable shorter validity period for checks that need to be reissued.  Award checks for Class Members who submit untimely claims that are accepted pursuant to paragraph 96-97 shall be valid for two (2) months after issuance.  If a check is returned as undeliverable to the Administrator ("Returned Award

28

Checks"), the Administrator will run CLEAR searches and remail to the address on file or to any updated address determined by the Administrator using the national change of address registry within two weeks of receiving the returned check.

103.    When the Administrator closes the QSF, any uncashed checks (that have not been previously re-issued and cashed) shall be deemed unclaimed funds of such Class Member and be transferred to the Administrator's Escheat Account, to be deposited upon expiry of statutory periods into the unclaimed funds accounts of the state of the Class Member's last available address.

## EXCLUSION FROM THE SETTLEMENT CLASS

104.    Any potential Class Member who wishes to be excluded from the Settlement Class must mail a request to be excluded from the Settlement Class ("Request for Exclusion" or "Opt-Out Request") to the Administrator and the Request for Exclusion must be received by the Administrator on or before the Bar Date.  Any Request for Exclusion must be in writing and state the name, date of birth, address, and social security number (if any) of the person requesting exclusion and contain a clear statement communicating that such person elects to be excluded from the Settlement Class.  Originals of all Requests for Exclusion shall be retained by the Administrator until such originals are filed with the Court with dates, addresses, and social security numbers redacted. Named Plaintiffs will not request exclusion pursuant to this paragraph. A list of all exclusions, as well as a copy of the written Requests for Exclusions sent to the Administrator, shall be provided to Class Counsel and Defendant's Counsel.

105.    Any Class Member who does not timely file a Request for Exclusion shall conclusively be deemed to have become a Class Member and to be bound by this Agreement and by all subsequent proceedings, orders, and judgments herein.

## OBJECTIONS AND EXCLUSIONS

106. Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of the proposed Settlement, including Class Counsel's Attorneys' Fees and Expenses Application, may do so by filing an objection as set out in the notice to be filed along with the motion for Preliminary Approval and described below. However, a potential Class Member who requests exclusion from the Settlement Class may not file an objection regarding the terms of the Settlement Agreement.

107. A Class Member who wishes to object must submit to the Administrator at the address provided in the notice their objection(s), as well as the specific reason(s), if any, for each such objection and whether the Class Member wishes to speak at the Fairness Hearing. The objection must state whether it applies only to the objector, to a specific subset of the Class, or to the entire Class, and also state with specificity the grounds for the objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection. The Administrator shall promptly send a copy of each objection it receives to Class Counsel and Defendant's Counsel by email.

108. A Class Member's objection must include the name and docket number of this Action and must also include the following information about the Class Member: (a) name; (b) address; (c) telephone number; (d) email address, if available; and (e) signature.

109. All objections must be received by the Administrator on or before the Bar Date.

110. A Class Member may object on their own, or through counsel hired at their own expense.

30

111.     Any attorney hired by a Class Member for the purpose of objecting to the proposed Settlement must serve a notice of appearance on Class Counsel and Counsel for Defendant and e-file the notice of appearance using the Court's ECF system.  The notice of appearance must be received by Counsel and filed with the Court on or before the Bar Date.

112.     Any Class Member who does not make an objection in the time and manner provided in this Agreement shall be deemed to have waived and forfeited any and all rights they may have to object, and shall be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement unless otherwise allowed by the Court.

## APPEARANCE AT THE FAIRNESS HEARING

113.     Class Member attendance at the Fairness Hearing is not necessary. However, any Class Member who submits a timely written objection to the Administrator in accordance with the requirements set out in this Agreement may appear at the Fairness Hearing either in person or through personal counsel retained at the Class Member's own expense.

114.     Class Members who intend to appear at the Fairness Hearing on their own behalf must send a letter to the Administrator notifying the Administrator of their intention to appear at the Fairness Hearing.  Such letter must also include the following information about the Class Member: (a) name; (b) address; (c) telephone number; (d) email address, if available; and (e) signature.  This letter must be received by the Administrator on or before the Bar Date.  The Administrator shall promptly send a copy of each letter it receives to Class Counsel and Counsel for Defendant by email.

115.     If a Class Member retains personal counsel (at the Class Member's expense) to appear on their behalf at the Fairness Hearing, such counsel shall serve on Class Counsel and

31

Counsel for Defendant and e-file using the Court's ECF system a notice of intention to appear, which must be received by Counsel and the Court on or before the Bar Date.

116.    Any Class Member who does not submit a letter to the Administrator or whose personal counsel does not file a notice of intention to appear with the Court in the time and manner provided in this Agreement shall be deemed to have waived and forfeited any and all rights they may have to appear at the Fairness Hearing and shall be foreclosed from appearing at the Fairness Hearing unless otherwise allowed by the Court.

117.    Any Class Member who submits an objection to the proposed Settlement shall be deemed to consent to the exclusive jurisdiction of the Court with respect to such objection and all issues that arise or relate to such objection, including any order issued or findings made by the Court regarding the objection.

118.    At the time Plaintiffs submit their motion seeking Final Approval of the Settlement, they shall also submit to the Court all of the timely requests for exclusion, objections, and Class Member letters indicating an intention to appear personally at the Fairness Hearing that have been timely submitted to the Administrator.

119.    Counsel for the Parties shall promptly inform each other of any submission served on them (or that otherwise comes into their possession) pursuant to paragraphs 104, 106-08, and 114.

## RELEASES

120.    Upon the Effective Date of Payment, in consideration for the agreements between the Parties and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, all Class Representatives and Class Members, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns shall hereby release,

remise and forever discharge the City, its predecessors, successors and assigns, together with all past and present officials, employees, representatives, and agents of the City of New York, or any agency thereof, and any person or entity represented by the Office of the New York City Corporation Counsel, and, in the case of all such entities, their respective past and present representatives, officers, directors, attorneys, agents, employees, privities, and insurers, from each and every Released Claim, as defined in the following paragraph, and shall forever be barred and enjoined from initiating, continuing, filing or otherwise prosecuting any Released Claim against any of the Released Parties. Unless a Class Member Opts Out of the Settlement pursuant to paragraph 104 above, this release shall apply whether or not such Class Member has executed and delivered a Claim Form or otherwise actively participated in the Settlement. A proposed stipulation of dismissal with prejudice will be filed along with motion for Preliminary Approval.

121. Every Class Member, except for those who Opt-Out pursuant to paragraph 104 above, shall be deemed to and shall have knowingly and voluntarily waived, released, discharged and dismissed all claims or causes of action that were or could have been raised by the Class Representatives and/or the Class or any Class Member based on the factual allegations in the Complaint (ECF No. 1), including but not limited to alleging unconstitutional over-detention from a DOC facility after payment of Bail, against the City of New York during the Class Period ("Released Claims"). This release shall be with full knowledge of any and all rights they may have, and they hereby assume the risk of any mistake in fact in connection with the true facts involved, or with regard to any facts which are now unknown to them. No Opt-Out shall share in any monetary benefits provided by this Agreement.

122. The Parties and Class Members acknowledge that the covenants and promises made by the City herein constitute adequate consideration in exchange for the releases in paragraphs 120-121.

123. Nothing in this Agreement shall be construed to bar any claims of Class Representative or Class Members based on or arising out of events occurring outside of the Class Period. Nor shall anything in this Agreement be construed to bar any claims by Class Representatives or Class Members based on or arising out of claims in any certified class action, other than this Civil Action, in which the Class Representative or Class Member already is a member of the certified class.

## MUTUAL FULL COOPERATION

124. The Parties agree that they will fully cooperate with each other to effectuate and implement all terms and conditions of this Agreement and exercise good faith efforts to accomplish the terms and conditions of this Agreement.

125. The Parties hereby agree not to appeal or challenge any aspect of this Agreement, or to otherwise collaterally attack or challenge this Agreement, except any award of Class Counsel's attorneys' fees and costs as specified in paragraph 79.

126. The Parties will take all necessary and appropriate steps to obtain approval of the Agreement and dismissal of the action with prejudice. If the District Court approves this Agreement, and if there is an appeal from such decision by a non-party, Defendant will join Class Counsel in defense of this Agreement on any such appeal or subsequent proceeding.

127. Plaintiffs will move for Preliminary Approval and Final Approval.

128. The Parties shall propose to the Court for approval the following settlement schedule:

34

- Deadline to submit Claim Forms (Bar Date), File Objections, or Opt-Out: 35 days before the Final Approval Hearing;

- Deadline to move for Final Approval: 15 days before the Final Approval Hearing; and

- Final Approval Hearing: at least 210 days after the Preliminary Approval Date.

## EFFECT OF THE AGREEMENT ON THE PENDING CIVIL ACTION AND CONTINUING JURISDICTION

129.     The Court, and any appellate court from which appeals of the Court's decisions may properly be brought, shall retain jurisdiction for the implementation and enforcement of the terms of this Agreement, and all Parties hereto and their counsel shall submit to the exclusive jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Agreement.

## MODIFICATION OF THE AGREEMENT

130.     This Agreement represents the entire agreement among the Parties, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Agreement shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and conditions contained herein, or to determine the meaning of any provisions herein.  This Agreement can be modified only on the written consent of all the Parties.

## COUNTERPARTS

131.     This Agreement may be executed in one or more counterparts, each of which shall be an original and all of which together shall constitute one and the same instrument, and will be binding when it has been executed and delivered by the last signatory.  A facsimile or scanned signature is an original signature for purposes of this Agreement.

Final Execution Copy

## GOVERNING LAW

132.     This Agreement shall be governed by and construed and interpreted according to the laws of the State of New York without reference to conflicts of law principles.

## MUTUAL INTERPRETATION

133.     The Parties stipulate that this Agreement was negotiated on an "arm's length" basis between parties of equal bargaining power to resolve a bona fide dispute between the Parties concerning liability and the availability of damages.  Also, Class Counsel and Counsel for Defendant jointly drafted this Agreement.  Accordingly, this Agreement shall not be construed in favor of or against any of the Parties.  Neither Party shall be considered the drafter of this Agreement for purposes of interpreting the Agreement, or the application of any rule of construction.

## BINDING UPON SUCCESSORS

134.     This Agreement shall be binding upon and inure to the benefit of the Parties and their respective personal representatives, administrators, heirs, successors, and assigns.

## NULLIFICATION

135. This Agreement is null and void in the event that any of the following do not occur:

      i. Preliminary Approval of this Agreement by the Court; or

      ii. Final Approval by the Court or an appellate court with jurisdiction.

Dated: October 21, 2022
      New York, NY


EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL
Matthew D. Brinckerhoff
Debra L. Greenberger
Vasudha Talla
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

ROMANO & KUAN, PLLC
Julia P. Kuan
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5075

KAUFMAN LIEB LEBOWITZ &
FRICK
David Lebowitz
10 E. 40th Street, Suite 3307
New York, NY 10016
(212) 660-2332

*Counsel for the Plaintiff Class and
Individual Plaintiff Class
Representative*

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the City of
New York
100 Church Street
New York, New York 10007
(212) 356-3532

By: _____
Peter G. Farrell
*Attorneys for Defendant City of New
York*

37

# APPENDIX A



**PREPARED FOR**
*City of New York - Civil Rights Violation*
Revised September 28, 2022

**PREPARED BY**
**Tiffaney Janowicz**
612.770.8805
TJanowicz@RustConsulting.com

**CLASS ACTION NOTICE AND SETTLEMENT SERVICES**

**PROPOSAL SUMMARY**

| | | |
|---|---|---|
| Estimated Class Size | | 71,000 |
| Estimated Filing Rate Used For Pricing Purposes | | 30.0% |
| **Publication/Media Notice Costs** | | |
| Wave One - Flat Rate | | $700,000 |
| Wave Two - Not To Exceed[1] | | 350,000 |
| **Total Publication/Media Notice Cost** | | **$1,050,000** |
| **Administration Costs** | | |
| Class Data Management | | $258,385 |
| Direct Notice | | 108,357 |
| Additional Notice and Reminders | | 63,686 |
| Website | | 11,750 |
| Claimant Advocacy Services (CAG) - Flat Rate | | 423,000 |
| Processing | | 105,529 |
| Call Center | | 79,206 |
| Distribution and Tax Reporting | | 52,957 |
| Fees | | 48,050 |
| Expenses | | 13,500 |
| Less: 10% Discount on Standard Hourly Rates | | ($22,123) |
| **Estimated Total Administration Cost** | | **$1,142,296** |
| **Administration Costs Not to Exceed** | | **$1,091,388** |
| **Total Project Cost** | | **$2,141,388** |

THANK YOU FOR GIVING RUST CONSULTING THE OPPORTUNITY TO SUBMIT THIS PROPOSAL. WE APPRECIATE YOUR CONSIDERATION.

**HIGHLIGHTS ASSUMPTIONS**

**This proposal includes the following assumptions and highlights:**

- DIRECT NOTICE. Address clean up and updates prior to mailing, including manual skip tracing (CLEAR where not highly confident in results through batch and standard manual trace). Append email for direct notice. Direct notice via mail and email. Notice package includes cover letter, summary notice, claim form and return envelope (prepaid). Forward any undeliverable notices if a forwarding address was returned by the post office. Trace any undeliverables. Reminders via email, double-panel postcards, and text. Additional notice programs including Friends and Family campaign and surety mailing. Notice will be in English and Spanish. Chinese and Russian summary and long-form notice, and claim form, available on Settlement website.

- DISTRIBUTION. Claimants will receive a check. Assumes up to four distribution dates. Trace and remail undeliverables.

- CALL CENTER. Toll-free telephone support in English and Spanish with other languages available upon request. Automated (IVR) service 24/7 with live operators during normal business hours. Monday through Friday.

- DATA SECURITY. Rust's infrastructure and capabilities related to data processing and security ensure that your sensitive data will be protected.

1. Wave Two. Per the Settlement Agreement, there are certain circumstances where the amount allocated for Wave Two may exceed $350,000.

**PREPARED FOR**
*City of New York - Civil Rights Violation*
**Revised September 28, 2022**

**PREPARED BY**
**Tiffaney Janowicz**
612.770.8805
TJanowicz@RustConsulting.com



## ◢ Class Data Management

Receive Data Files
File Loading and Mail File Creation
Add'l Data Processing, Deduplication, Fix Nonconforming Data
Address Trace - Batch Process (Verify and Update)
Address Trace - Manual Review
Address Trace - CLEAR
Trace to Append Email
Trace to Append Mobile Number

## ◢ Direct Notice

### CAFA NOTICE

Prepare and Coordinate CAFA Notice
Data Analysis (By State)
Post to CAFA Website and Deploy Notices w/ Link
Postage - Priority Mail

### INITIAL NOTICE

Notice Design, Mailing Setup and Coordination
Send Email Notice
CASS/NCOA/LACS Processing
Print and Mail Notice Package
Postage - Notice Package (2 ounce)

### FOLLOW-UP TO INITIAL NOTICE

Receive Undeliverable Mail and Update Database
Trace Undeliverable - Manual
Trace Undeliverable - CLEAR
Coordinate Remailing (Assume 3 Mailings)
Re-Mail Individual Notice
Postage - Re-mail Notice (2 ounce)
Print and Mail - Individual Notice Requests
Postage - Individual Notice Requests (3 ounce)

## ◢ Publication and Media Notice

### NOTICE PROVIDED BY KINSELLA MEDIA

Wave One Notice Plan - See attached detail
Wave Two Notice Plan - See attached detail
Optional Subsequent Waves

**PREPARED FOR**
*City of New York - Civil Rights Violation*
**Revised September 28, 2022**

**PREPARED BY**
**Tiffaney Janowicz**
612.770.8805
TJanowicz@RustConsulting.com



## Additional Notice and Reminders

### REMINDER NOTICE
Setup and Coordination
Send Reminder Email Notice
Send Reminder Text Message
Print and Mail - Reminder Postcards (Double Panel)
Postage - Postcards

### SURETY LETTERS
Setup and Coordination
Print and Mail - Letter
Postage - Letter

### FRIENDS AND FAMILY CAMPAIGN
Setup and Coordination
Print and Mail - Postcard (Double Panel)
Postage - Postcard
Send Friends and Family Email

## Website

### WEBSITE WITH POSTED NOTICE AND CLAIM FORM (ENGLISH, SPANISH, CHINESE AND RUSSIAN)
Setup and Load Documents (Four Languages)
Draft and Post Website Content
Address Change Module (Requiring Claimant PIN)
Website Updates and Edits
Monthly Maintenance/Hosting

## Claimant Advocacy Services
Counseling Services Provided By CAG - Standard Call

## Processing

### OPT-OUTS AND CORRESPONDENCE/EMAIL
Receipt and Process

### HARD COPY CLAIM FORMS
Draft Claims Procedures, Training and Reports
Business Reply Set Up Fees, Maintenance by USPS
Business Reply Postage
Receipt and Data Capture
Imaging (2 Page per Form)

### ONLINE CLAIM FORMS (ENGLISH AND SPANISH)
Coordinate Design and Screen Development
Develop Online Claim Filing Screens
Download Forms from Website & Update Database

### VALIDATION
Validate Claims - Standard Review
Validate Claims - Manual Review (average 5 minutes per claim)

### CALCULATION
Calculation and Quality Review

### PROCESS DEFICIENT CLAIM FORMS
Draft Letters and Coordinate Mailing
Generate Cure Letter and Mail
Postage - Letters
Receive Response and Update Database

**PREPARED FOR**
*City of New York - Civil Rights Violation*
**Revised September 28, 2022**

**PREPARED BY**
**Tiffaney Janowicz**
612.770.8805
TJanowicz@RustConsulting.com



## ◢ Call Center

Set-up (English and Spanish)
Draft Scripting, Coordination and Reports
Call Center Management
CSR Training
Telephone Support - Dedicated Staff for One Month
Telephone Support - Shared Staff
Interactive Voice Response (Automated Q&A)
Notice Requests
800# Charges

## ◢ Distribution and Tax Reporting

### FUND DISTRIBUTION
Fund Setup, Distribution Coordination and Reports
Create Distribution Files, Quality Control
Print and Mail Payments with 1099s
Postage - Award Payments

### REISSUE PROCESSING
Manage Reissue Process, Resolve Issues
Receive Undeliverable Payments and Update Database
Address Trace
Print and Mail Reissue Payments
Postage

### BANKING ACTIVITIES AND TAX REPORTING
System Charges Banking Activities
Account Reconciliation
System Charges Banking Activities
Annual Fee -QSF Income Tax Reporting
Individual Income Tax Reporting (1099)

### ESCHEATMENT SERVICES
Manage and Implement Escheatment Program

## ◢ Fees

### PROJECT MANAGEMENT
Project Planning and Preparation, Client Calls
Ongoing Maintenance, Declarations, Reporting

### TECHNICAL SUPPORT
Ongoing Maintenance, System Modifications, Reporting, QA

## ◢ Expenses

Translation Costs (Spanish, Russian, Chinese)
Other Charges and Out-of-pocket Costs



## Paid Media - Wave One

### Digital & Social Media

| Website | Format | Summary |
|---|---|---|
| Facebook/ Instagram/Twitter<br><br>Google | Ad Text and Image<br><br>Banner Ad | Ads will appear in English and Spanish. Tactics include:<br>o Email address matching to target ad delivery to known class members.<br>o Target users who have liked/followed pages related to prisoner/family support (i.e., New York State Prison Wives Support Group, Proud Prison Wives and Families of Prisoners Support Group, etc.) |
| Demographic Targeting | Banner Ad | Geographically target ads (NYC market) to lower income, Black and Latino men located in NYC market through online networks and Entravision (Spanish language network). |
| Google/Bing Ads & Search Partners | Ad Text | Sponsored keyword ads (e.g., Department of Corrections, City of NY, NYC Prison, NYC Jail, and DOC jails (Otis Bantum, Rikers, Anna M.Kross), NYC inmate lookup) on Google AdWords, Bing, and their search partners. |

### Broadcast Media

| Media | Format | Summary |
|---|---|---|
| Local TV (Hispanic) | :30 seconds | Spanish-language ads will air on various local cable television networks in the NYC market (such as ESPN Deportes, Fox Deportes, and Univision). |
| Local TV (General Market) | :30 seconds | Ads will air on various local cable television networks in the NYC market (such as BET and TV1). |
| Local Radio (Hispanic) | :30 seconds | Spanish-language ads will air on Univision local stations in the NYC market (such as WXNY-96.3 FM, WQBU-92.7 FM, WSKQ-FM, or WADO-1280AM). |
| Local Radio (General Market) | :30 seconds | Ads will air on local radio stations in the NYC market (such as WKTU-103.5FM, WWPR- 105.1FM, WFAN-101.9FM, WBLS-FM, WCBS- FM, or WEPN-98.7FM). |

### Print Media

| Publication | Format | Summary |
|---|---|---|
| *am New York Metro* | Quarter Page | One insertion in *Am New York Metro*, with a circulation of 160,558, is a free daily newspaper published in NYC. |
| *Harlem Community Newspapers* | Quarter Page | One insertion in *Harlem Community Newspapers*, with a circulation of 25,000, comprises a Bronx, Brooklyn, Queens, and Harlem edition. |
| *Rolling Out* | Quarter Page | One insertion in *Rolling Out*, with a circulation of 78,915, is the leading African American newspaper covering NYC. |
| *El Especialito* | Half Page | One insertion in *El Especialito*, with a circulation of 175,000, is a weekly Hispanic newspaper published in NYC. |

| | | |
|---|---|---|
| *Prison Legal News* | Half Page | Four insertions in *Prison Legal News*, a monthly magazine with a circulation of 9,000, reaches prisoners and people concerned about prisoner rights and criminal justice related issues. |

**Outdoor Media**

| Media Type | Format | Summary |
|---|---|---|
| Bus/Subway | Poster Ads | Poster ads will be displayed at subway and bus shelters in the NYC market. Ads will be focused in areas with the heaviest levels of incarceration. |

**Earned Media and Outreach**

**Summary**

Send mail/email to groups that may interact with potential class members, including:
- o Homeless Shelters
- o Rehab Facilities
- o Addiction Treatment Centers
- o Religious Organizations

**NYC Press Release** A state-wide press release will be distributed in New York state to inform news outlets about the Settlement and generate media coverage. The release will highlight the toll-free telephone number and case website address so that class members can obtain complete information.

**Total Program Cost Wave One**      **$700,000**

**Paid Media - Wave Two**

Specific recommendations for Wave Two media will be provided after analyzing the results of Wave One. The program will include the top performing tactics from Wave One. A retargeting pixel will be placed on the browser of all visitors to the settlement website and any Facebook users that clicked on an ad. During Wave Two, ads will be targeted to these users.

**Total Program Cost Wave Two**      **Not to Exceed $350,000***

*Per the Settlement Agreement, there are certain circumstances where the amount allocated for Wave Two may exceed $350,000.